## Case No. 4,873.

FLINT v. NORWICH & N. Y. TRANSP. CO.

[6 Blatchf. 158; 34 Conn. 554; 2 Am. Law Rev. 569.] [1]

Circuit Court, D. Connecticut. June 27, 1868.

SHIPMAN, District Judge (charging jury). There are a number of facts, touching this interesting and important case, which is now finally to be submitted to you, about which there is no serious dispute. The plaintiff, a physician, residing in Boston, left his home, for New York, on the 6th of June, 1864. Before leaving, he purchased a through ticket, called a coupon ticket, by which he became entitled to a passage from Boston to Worcester, over the Boston and Worcester Railroad; from Worcester to Norwich, over the Norwich

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission. 2 Am. Law Rev. 569, contains only a partial report.]

and Worcester Railroad; from Norwich to New London, over the Northern Railroad; and from New London to New York, through the Sound, on one of the defendants' passage boats. He passed safely over the route from Boston to New London, where he arrived not far from half-past ten or eleven o'clock, in the evening, left the cars, and proceeded on board of the defendants' boat, the steamer city of Boston, which was then lying at the dock, with steam up, ready to start as soon as the passengers by the train, with their luggage, and some express freight, should be taken on board. The plaintiff, with other passengers, one of whom was a lady under his charge, went upon the main deck of the steamer, through her after starboard gangway. He proceeded, with the lady, through or along with a crowd of passengers, passed up the stairs, to the upper saloon, and, after some little time, leaving the lady, returned to the main deck, and went to the ticket office, to receive his state-room key, to which his ticket entitled him. He obtained the key, and proceeded to return from the ticket office to the upper saloon, by the proper route. When he had gone a short distance from the ticket office, and before he had reached the stairs, a loaded musket fell from the hands of a soldier, or non-commissioned officer, or was thrown down, and was discharged as it fell, and the ball passed through the foot of the plaintiff, just back of the toes, shattering the bones, and causing a dangerous wound, from which he suffered severely, for a long time. Finally, to save his life, as advised by his surgeons, he was compelled to have his foot amputated. He suffered for a period of nearly three months, and incurred expenses, in a city distant from his home. His activity and capacity for business and professional usefulness have been more or less permanently impaired. He claims that this injury, with all its serious consequences, was the result of a breach of duty on the part of the defendants, and, to recover proper damages therefor, he has brought this suit. The burden of proof is on the plaintiff, and it is now for you to say, whether or not, on the whole evidence, the claim of the plaintiff is well founded. The rules of law, which you are to apply as tests to this evidence, I will refer to particularly hereafter.

As I have already stated, before the arrival of the train which brought the plaintiff to New London, the steamboat was at the dock, with steam up, ready to start, when the passengers, the luggage, and the express freight from the train should all be on board. She had been lying there for some time. Between nine and ten o'clock, an hour or more before the train arrived, a detachment of United States soldiers, from Fort Trumbull, about sixty-three in number, with several non-commissioned, and two commissioned officers, went on board, and were there when the train arrived. Some fourteen to eighteen of these soldiers were armed with muskets, loaded and capped, and furnished with bayonets. They were detailed as guard over the rest, who were unarmed. Witnesses, called by the defence, state, that this detachment was placed on the main deck, forward of the engine room; that armed sentries were stationed, to keep them there; that a sentry was placed on each side of the engine room, to prevent them from going aft; and that two sentries were stationed at the forward starboard gangway, and one at the head of the stairway leading from the forward part of the main deck to the cabin below. Some of these witnesses say, that a sentinel was also placed at each of the two ladders which led from the forward part of the main deck to the saloon deck above. This was substantially the condition of things on the boat down to, or near to, the time when the train which brought the plaintiff arrived. On this train came a large number of passengers, among whom were about one hundred and fifty soldiers, in a detachment, under the command of officers, and who were ultimately marched on board, at the forward gangway. By the same train came, also, about a dozen or twenty soldiers, travelling, apparently, as ordinary passengers. These also went on board, but whether by the forward, or the after, gangway, it may be proper for you to consider, in deciding upon the conflicting evidence touching the condition of things on the after part of the deck, where, and at the time, the passengers were coming on board, and getting their tickets and state-room keys. The train having arrived, the plaintiff proceeded on board, by the proper entrance. Here the duty of the defendants toward him, as a passenger, commenced. They undertook to transport him, for hire, and were bound to secure him a safe passage, so far as that could be done, by the exercise of due care on their part. This was a duty imposed upon them by their contract, and by law. The precise rule of duty to which they are to be held, and which you are to apply to the evidence, in deciding whether or not they are liable in this action, is this: The defendants were bound to exercise the utmost vigilance and care, in maintaining order, and guarding the passengers against violence, from whatsoever source arising, which might reasonably be anticipated, or naturally be expected to occur, in view of all the circumstances, and of the number and character of the persons on board. Now, the plaintiff has testified, and has called a number of witnesses, who, he claims, substantially concur to the same points, that, immediately upon stepping upon the boat, he found himself in a dense crowd of persons, many of whom, like himself, were civilian passengers from the train, but among whom were a number of soldiers, some of them armed, who were boisterous, some evidently intoxicated, quarrelsome, profane, and exhibiting more or less disposition to rudeness and violence, by scuffling and jostling one an-

other and the civilians. The plaintiff claims, that the evidence touching this part of the case proves, that this disorder and uproar continued for from fifteen minutes to half an hour, until he returned from the upper saloon to seek his key, and until the discharge of the gun by which he was wounded; that, during all this time, no efforts were made, by the servants of the defendants, to quell this disturbance; and that it finally terminated in this injury to him. Now, if all these facts are, in your judgment, substantially proved, you will have a right to infer negligence on the part of the defendants, and hold them liable. If disorderly men, armed with loaded muskets, were in the space through which the passengers had to pass, it was the duty of the defendants to see that they were removed before the passengers came on board, or that the latter were notified of the danger, or that adequate protection was furnished. If armed and boisterous and quarrelsome soldiers rushed into the space referred to, after the passengers had begun to come on board, and produced and continued an uproar there, it was the duty of the defendants, through the officers and hands of their boat, to make every effort to quell the disturbance, and protect their passengers from violence and danger, and to call upon the military officers to enforce discipline.

But the defendants gave a very different version of the events of that night. They claim to have proved, by their witnesses, that the space where the passengers from the train came on board was clear, at least of soldiers, when they arrived; that there was no soldier, armed or unarmed, upon that part of the boat, at that time; and that, if any soldiers came in with, or among, the passengers, as they were pressing on to the boat, they were few in number, unarmed, and travelling as ordinary passengers, and behaved as peaceably as the civilians did. They further claim, that they have shown, by their witnesses, that, soon after the passengers got on board, one of the unarmed recruits, from Fort Trumbull, undertook to pass the sentry on the port side of the engine room, and was repulsed; that he repeated the attempt, and again failed; that he finally returned, with several of his companions, and overpowered the sentinel; that then he, or they, rushed aft, near to or into the space where the passengers came on board; that several of the guard followed, when a scuffle ensued, near the saloon stairs, between the insubordinate recruit or recruits, and the pursuing guards; and that it was in this brief, or, as the defendants claim, momentary, struggle, that the gun by which the plaintiff was shot was dropped, or thrown down.

Now, it is for you to say which of these versions is correct. As I have already said, if disorderly soldiers, armed with loaded muskets, occupied the space where the passengers came upon the deck, and no notice was given to the passengers of that fact, so that they might avoid the danger; or, if such soldiers rushed in upon that space, while the other passengers were coming on board, and securing their keys or tickets, and conducted himself in a quarrelsome and disorderly manner for a considerable time, during which the plaintiff was shot, without any effort on the part of the officers or crew of the defendants to suppress the disorder and protect the passengers, or induce the military officers to do so, and the plaintiff was injured in consequence, then you have a right to hold the defendants liable. If, on the other hand, the version given by the defendants' witnesses is the true one, then you will proceed to another inquiry, that is, whether, in this aspect of the case, the defendants did exercise their utmost vigilance and care, in maintaining order, and guarding the passengers against violence, from whatever source arising, which might reasonably be expected to occur, in view of all the circumstances, and the number and character of the persons on board. If they did this, or if it was done by the military, the defendants are not liable. If such vigilance and care were not exercised, and the plaintiff was injured in consequence, then the defendants are liable, and your verdict must be for the plaintiff.

And here it is proper that I should notice a circumstance set up by the defendants. They say, that they had no alternative but to take these soldiers from Fort Trumbull, who caused, as they assert, this disturbance, and this injury to the plaintiff; and that they were compelled to take them on this boat, by military coercion. You may assume that fact as proved, but this will not vary the liability of the defendants under the present circumstances. They took the plaintiff as a passenger, voluntarily, after this detachment was on board, and without notice to him; and their obligations to him were just the same, whether they took the Fort Trumbull troops voluntarily, or under compulsion. Those troops were on board long before the plaintiff was, the defendants knew the fact, no notice was given to the plaintiff, and they were bound to take such precautions for the protection of the civilian passengers, as were demanded by the rule I have laid down. They say that they did take them, or see that they were taken; and that the presence of the armed sentinels, at the points stated by the witnesses, to keep the soldiers in their proper place, was all that the highest vigilance and prudence required. The guard was not under their command, and the only apparent additional precautions that the defendants could have taken, that occur to me, (you will say whether they could have taken others,) would have been to apply to the military officers to have the sentries increased in number, or to place men, officers of the boat, or hands, under their own control, at the passages, to support the armed sentries, in case of difficulty, and

to act as an additional guard, and to quell any violence that might occur, as a more secure protection to the passengers. I do not say that this was, or was not, their duty. It is for you to determine. It is exclusively for you to say what their duty was—whether the condition of things on board of the boat, before the train arrived, required them, in anticipation of its arrival, to take these, or any other precautions, beyond what were taken; and, consequently, whether their neglect to do so was a remissness in their duty, and a neglect of their legal obligations, as I have laid them down. If the defendants discharged their duty, within the rule I have submitted to you, your verdict must be for them. If they failed to do so, and if the injury to the plaintiff is fairly attributable to that failure, then your verdict must be for the plaintiff.

If you find for the plaintiff, you will assess the damages at such a sum as will, in your judgment, compensate him for the necessary expenses he has actually incurred in his sickness and cure, and in providing himself with artificial limbs; for the loss of time and income from his profession, during his illness; for the permanent injury inflicted upon him; and, so far as money can compensate him, for the pain he has suffered. You will give the whole evidence a careful consideration, apply to it the rules of law, as I have laid them down, and return such a verdict as your judgment may dictate.

The jury returned a verdict for the plaintiff, for $10,000.