## Case No. 4,874.

FLINT v. NORWICH & N. Y. TRANSP. CO.

[7 Blatchf. 536.] [1]

Circuit Court, D. Connecticut. Sept. 20, 1870. [2]

Linus Child, Richard H. Dana, Jr., and Simeon E. Baldwin, for plaintiff.

Lafayette S. Foster and Jeremiah Halsey, for defendants.

Before WOODRUFF, Circuit Judge, and SHIPMAN, District Judge.

WOODRUFF, Circuit Judge. It was conceded, on the argument of this motion, by the counsel for the defendants, that the general question, whether a common carrier of passengers is liable for an injury received by one passenger through the negligence or from the misconduct of a fellow passenger, is not raised by this motion or involved therein. Nor does the case now before us disclose upon what grounds, either of law or fact, the verdict for the plaintiff in this case was rendered. It must, however, have necessarily proceeded upon some neglect of duty or violation of obligation to employ the utmost care and diligence that the plaintiff might be carried safely to his destination.

Against what possible injuries the defendants were bound to adopt precaution; what dangers they were bound to foresee and guard against in advance; whether, in these days, in which the means of carriage are customarily furnished on a large scale and are used by many hundreds together, owners of steamboats and proprietors of railroad lines are under obligations to have at command a force adequate to the protection of passengers against possible assaults and injury from other passengers, and, therefore, should be prepared in advance to furnish such protection, even against the just presumption that their passengers will be orderly, keep the peace, and do each other no harm; and, especially, whether the presence of a detachment of soldiers received as passengers, under the ordinary command of proper officers, ought to have suggested to the defendants that there was any danger whatsoever that other passengers would be injured, and so required them to provide special defence or protection to such other passengers—are, it may be, questions of interest to carriers of passengers. It would seem that, in respect to such a detachment, the presumption of obedience and subordination should obtain, and that a common carrier would not be bound to anticipate the contrary. On the other hand, if a carrier has

already received a company of soldiers, or a party, whether soldiers or not, whom he finds to be "crazy drunk," (to use the language of the case before us,) and who become riotous and disorderly, so as to menace danger to other passengers to thereafter arrive for carriage, a different question arises. The case, as made for the purposes of the motion, is not very distinct upon that point; but if, before the train on which the plaintiff and other passengers arrived, such a condition of the soldiers had already become manifest, the duty of the defendants to adopt such precautions as were in their power to restrain them, for the protection of the plaintiff and such other passengers, would seem obvious. And if, after their arrival on board, disorder and violence arose among the soldiers or among any passengers, it is no harsh rule that holds it to have been the carrier's duty to use such means as he had, or, by ordinary care, might have had, for the protection of the peaceable. The evidence which was objected to and was received, was, if pertinent at all, applicable to this view of the duty of the defendants. The rule of liability prescribed by the court is not stated in the case before us, but, as it was not excepted to, it must be assumed, for all the purposes of this motion, to be the correct rule, and I have made the foregoing suggestions for the sole purpose of seeing whether, under any rule of liability, the evidence so given was competent in its nature and relevant to the question.

Assuming that the defendants, when the disorderly conduct of these soldiers began, became bound to employ their means diligently for the protection of other passengers, the question for the jury was, did they do so? and, if not, did their negligence in this cause the injury to the plaintiff of which he complained? It was pertinent to this question to inquire how many riotous persons there were, how long the disturbance continued, and to what extent it was carried, and, as especially bearing on the question of due diligence, how far the officers of the soldiers, whose plain duty it was to use every means which even military law would warrant to preserve order, were in the actual discharge of that duty; for, under any view of their own duty to be diligent, the defendants had a right to rely upon and take the aid of such officers, and, until it appeared that such aid was withheld or inefficiently furnished, a jury might well conclude that the defendants were themselves excused from any interference. In this view, then, was the evidence in question competent and relevant?

The objection on the trial was not to any parts of the testimony of the witnesses, but to the whole; and it would not now be just to the plaintiff, or conformable to the rule of law governing the subject, to permit the defendants to divide the testimony into parts or sentences, and argue as to one or more, that it or they are not competent. If, on the trial, the defendants had objected to a part or portion of the testimony, the plaintiff might have waived it. If it were claimed that the words of the sergeant addressed to the officer in the cabin were not competent evidence, as against the defendants, of the fact which he stated, still, if the testimony apart from these words was admissible, the objection must fail. In short, if the whole testimony, as an aggregate, was admissible for the purposes for which it was offered, then it was properly received, although specific parts of it might have been pointed out which it would have been the duty of the court to exclude. Counsel should make their objections in such case specific, so that the adverse party may have an opportunity to waive what is objectionable, and so that the court may have its attention called specifically to the precise point which counsel propose to urge, in any stage of the cause, to the testimony offered.

Another preliminary observation should be made, in view of the arguments presented on the motion. The objection which was made is itself of a somewhat equivocal meaning. The defendants objected to the admission of the evidence for all the purposes for which it was offered. This, it is argued by the plaintiff, means simply a general objection to the evidence for the purposes for which it was offered, and is not a specific objection that the evidence is not admissible for any of the purposes for which it was offered, and, hence, that if the evidence was admissible for any one of the purposes for which it was offered, (other than to prove the condition of affairs on deck, which was particularized,) the objection was not well taken and should be overruled. Although the form in which the objection is stated is somewhat equivocal, I am inclined to think its import, as intended and understood, was particular and not general. The plaintiff had stated several purposes for which he offered the testimony, and, when the defendants said they objected to its admission for all the purposes for which it was offered, they meant for each or any of these purposes, and they added their particular specification of the purpose to show the condition of affairs on deck, because they laid special stress upon that point. I admit that the language is not the best chosen to convey the idea, but, on a motion for a new trial, a rigid technical criticism ought not to have much weight, if the court are satisfied that there was error operating to the prejudice of the party objecting.

I shall deal with the objection, therefore, as if it were made distinctly and consecutively, to the admission of the testimony for each of the purposes specified by the plaintiff, as each purpose was separately announced.

Reverting to the questions in issue, it was material, or certainly relevant, to show the character of the disturbance on deck, whether formidable or slight, to show its duration, and whether any and what efforts were made to repress it, or to protect passengers

from injury therefrom, and, as connected with this last, whether the officers of the detachment were using their power and means for the purpose. Indeed, it was not denied, on the argument of this motion, that these were relevant and proper subjects of inquiry; and these are the precise purposes for which the testimony was received. If, then, the testimony bore on these matters, and was, in its nature, competent, the objection was properly overruled.

1. There was evidence that a detachment of soldiers, in command of two lieutenants, a sergeant and two corporals, were on the boat, and that a conflict between some of the men and others who had been selected as a guard, was in progress; and that it began shortly after the other passengers came on board. At a time plainly concurrent with the disturbance, a person in uniform, with stripes on his arm, descends from the very place of the disturbance, near the saloon stairs, into the saloon, and, with the form of military etiquette, salutes a man in military uniform, which, in the judgment of the witnesses, was that of a lieutenant, the latter replies to him in manner and terms of military authority, and the former yields obedience, but again returns and invokes the aid of the other. Now, all this is not conclusive evidence that these were officers of the disorderly soldiers; but the uniforms, and the evident relation between them, testified by acts as well as words, were circumstances which were proper to be submitted to a jury on that question of identity. If a witness had been produced, and had testified that he saw a person, in the uniform of an officer, give orders to the detachment, which they obeyed, it would not be conclusive evidence that such person was an officer, or that he had, in fact, any authority; but it would tend to show both. Transactions which, in all probability, would not take place unless certain other facts existed, are evidence oftentimes from which such other facts may be inferred; and the affairs of life are to be judged of according to their usual and natural signification.

When, therefore, proof has been given that a detachment of soldiers and their officers are on board the steamer, and persons are pointed out, in the uniform of officers, acting toward each other as such, and, in reference to the soldiers, giving and obeying commands, although not in the very presence of the soldiers, there is, certainly, a presumption that they are the officers, because it would be unnatural, and against the ordinary course of human experience, to think otherwise. Although the witnesses had no actual knowledge other than what they witnessed, the transaction would, certainly, aid the jury in determining whether they were officers of the detachment, because, in the absence of counter evidence or explanation, it was grossly improbable that they were not. I have no hesitation in saying that, upon the question of the identity of the officers, and their connection with the detachment of soldiers, the testimony was proper for the consideration of the jury. It follows, that it bore distinctly on the question—where were such officers, and were they doing anything, and what, for the preservation of order, the repression of the violence, and the protection of peaceable passengers?

2. It was of some materiality, under the rule of duty resting on the defendants, above stated, to show how long the disturbance continued before the plaintiff was injured, because, in view of the other evidence as to the number of men engaged therein, the jury were to consider whether the defendants made suitable endeavors, by the means then in their power, to suppress it. If the acts of the supposed sergeant and lieutenant were any evidence of the condition of things on deck, then, clearly, his coming and departure, and the subsequent report of the gun, were evidence, slight, I admit, and of very little importance, but yet evidence, that the duration was somewhat greater than the time thus consumed in these acts of the sergeant, at least, that it began before he came down, and continued during his interview and afterwards, until the report of the gun was heard.

3. Did the transaction legitimately tend to show the condition of things on the deck? Clearly, in the view above taken, it tended to show that the soldiers were left without the care of the lieutenant. For, if the jury should be satisfied that the supposed sergeant and lieutenant were officers of this detachment, then they necessarily must find, first, that such lieutenant was doing nothing personally for the promotion of order, and that temporarily, at least, the men were left without the presence of either him or the sergeant; and this to some extent appertained to the condition of affairs on deck.

But, more than this, the entire transaction was of significant import touching the extent and character of the disturbance there; for, there was other proof of the fact of disturbance and that it was caused by the soldiers. Pending the disturbance, their chief non-commissioned officer comes to his superior officer, expresses his inability to deal successfully with it, and invokes his aid in suppressing it. It is refused, and he returns, and soon after hurries in evident excitement down the stairs and implores assistance in terms of despair. It seems scarcely possible to doubt the significance of these acts, or their relevancy, if competent. An illustration alike in kind and only differing in that its competency and relevancy may be more strikingly obvious, may be suggested. A company of disorderly persons enter a house and begin a disturbance, and women and children come rushing from the house in evident fright and screaming for aid. This would be evidence that what was en-

.acted within was of a character and extent calculated to create alarm and awaken apprehension of danger. It would not, perhaps, be proof of particular acts, and, possibly, their declarations might not be used to fix guilt upon particular individuals, but, of the general fact that the disturbance, the existence of which was otherwise proved, was of such proportions or extent as to excite and alarm, and so to call for interference to stay or suppress it, it would clearly be competent evidence.

4. It is strongly urged that the declarations of the sergeant to his superior are not evidence as against the defendants, and should not be received. I have already observed that the declarations were not objected to as such. The objection was general, to all the testimony. But I do not think it necessary to dispose of that objection by any technical answer. In my judgment, the declarations were admissible, as indicating, first, the relation of the sergeant to his officer—not as a mere declaration, but as an act of subordination; second, as showing the alarm and fright of the sergeant and a state of mind indicating need of assistance; and, finally, the whole transaction was a part of the res gestae, in such sense that the jury might properly be permitted to hear it. His declarations were not, upon their own isolated and separate credit, to be received as evidence of the facts he stated, but the facts to be inferred do obtain credit from the circumstance that, in the situation in which he was placed, in the fright and alarm under which he spoke, and in the condition of things on deck already proved, he did make such utterances to his superior officer. Declarations, when part of the res gestae, bear the character and have oftentimes the force of acts, and, still oftener, are used as proper evidence, giving character and explanation to other acts. Mr. Starkie says, with singular pertinency to the declarations now in question: "If the declaration has no tendency to illustrate the question, except as a mere abstract statement, detached from any particular fact in dispute, and depending for its effect entirely on the credit of the person making the declaration, it is not admissible; but, if any importance can be attached to it as a circumstance which is part of the transaction itself, and deriving a degree of credit from its connection with the circumstances, independently of any credit to be attached to the speaker, then the declaration is admissible." This describes the testimony in question. The connection of the whole with the circumstances of the case, gives it credit and significance, not as the isolated act or statement of the sergeant, but as a narrative of occurrences in their connection with the principal events, receiving significance and inviting belief. Confining myself to the single question presented on this motion, I am constrained to say that the motion for a new trial must be denied.