MARGARET T. BROOKS *vs.* OLD COLONY RAILROAD COMPANY.

Suffolk.    January 19, 1897. — March 17, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Personal Injuries — Railroad — Runaway Horse on Platform of Station — Action — Negligence — Evidence.*

If, while a person is waiting upon the platform of a railroad station to take a train for which he has a ticket, a runaway horse comes along a public street which crosses the railroad at grade close by the station and has gates lowered on each side of the track, the train having just come in, and breaks through the first gate, stops a little at the second, turns towards the station, passes between the locomotive engine and a telegraph post, a space not over four feet in width, and comes upon the platform, throwing down and injuring the person, he cannot maintain an action against the railroad corporation for his injury. The failure of the gate-tenders to catch hold of and stop the horse is not evidence of negligence which is entitled to be considered; and evidence of the condition of the gate at the time of the accident, or several months earlier, when a horse, not a runaway, was alleged to have pushed it aside by pressing against it, is immaterial.

TORT, for personal injuries occasioned to the plaintiff by the alleged negligence of the defendant.    Trial in the Superior Court, before *Fessenden,* J., who ruled that the plaintiff was not entitled to recover, and directed the jury to return a verdict for

the defendant; and the plaintiff alleged exceptions.    The facts appear in the opinion.

*C. W. Bartlett & H. F. Naphen*, for the plaintiff.

*C. F. Choate, Jr.*, for the defendant.

ALLEN, J.    The plaintiff was standing upon the platform of the defendant's railroad station, at the Roxbury crossing, in Boston, waiting to take a train, for which she had a ticket.    It is not in controversy that she is to be regarded as a passenger.    A much travelled public street, Tremont Street, crossed the railroad at grade, close by the station.    Gates were down on each side of the track, as the train had just come in.    A runaway horse came along the street, broke through the first gate, stopped a little at the second, turned towards the station, passed between the locomotive engine and a telegraph post, a space not over four feet in width, and came upon the platform and threw down and injured the plaintiff.    The question is whether, on the evidence, the plaintiff was entitled to go to the jury upon the defendant's negligence.

There is no doubt of the duty of a railroad company to use all such means and precautions as are reasonably practicable for the protection and safety of its passengers, not only from the negligence or misconduct of its own agents and servants, but also of other passengers, and of other persons who are not passengers. This duty is stated in *Simmons* v. *New Bedford, Vineyard, & Nantucket Steamboat Co.* 97 Mass. 361, to require "the utmost care which is consistent with the nature and extent of the business in which he [the carrier of passengers] is engaged . . . in making such reasonable arrangements as a prudent man would make to guard against all dangers, from whatever source arising, which may naturally and according to the usual course of things be expected to occur." (p. 368.)    And again, the defendants "were not indeed responsible for the negligent or wrongful acts of the passengers to the same extent as for those of their own officers and crew.    But they had the power to make reasonable regulations as to the places which passengers might occupy and as to their conduct while on board.    And they were bound to use the utmost skill and care of prudent men in taking precautions to prevent any passenger from being injured by the ignorant, negligent, or reckless acts of other passengers." (p. 369.)

The test of the defendant's responsibility for this accident is whether the defendant was reasonably bound to anticipate that such a thing might happen, and to take some special precautions against it.

The accident arose from a cause wholly outside of the operations of the defendant. The plaintiff was not in a car, but on the platform. The horse was not in the defendant's care or use, and did not run away in consequence of anything done by the defendant. If the horse had run upon the sidewalk of Tremont Street and hurt persons travelling thereon, nobody would have thought of seeking to hold the city responsible. The rule requiring peculiar care of carriers of passengers is to be applied with reference to the circumstances. When passengers are on board a steamboat or a railroad car, of which the carrier has the exclusive management and control, the duty of the carrier has reference to that state of things. When passengers are on a wharf or landing place, or on the platform of a railroad station, which is usually an open and almost a public place, to which others than passengers and servants of the carrier are accustomed to have free access, the duty of the carrier has reference to that state of things. It is well known that it is not the custom to fence in railroad platforms for passengers at way stations. All through the Commonwealth they are often so arranged as to allow horses with carriages or wagons to come close up to them. It is made easy for passengers and others to come upon or to leave these platforms. Many persons who are not passengers are often found upon them, — hackmen, drivers of private carriages, expressmen, teamsters, and many others. Indeed, this state of things is partly recognized by the statute requiring railroad companies to give equal facilities for the use of their depots and grounds. Pub. Sts. c. 112, § 188. There is always a possibility that horses, as well as other animals, may come upon the platforms ; but accidents from this cause are rare. Looking at the matter in the light of experience, of custom, and of statutory requirements, merely arranging a platform of a station in such a manner as to make it possible for horses to come upon it is of itself no evidence of negligence.

Moreover, having special reference to the facts of the present case, it is not to be overlooked that the horse gained access to

the platform upon which the plaintiff stood only by passing through a space of not over four feet in width, between the locomotive engine and a telegraph pole, this being at the time the only way in which he could reach the platform from the place where he stopped at the second gate. It certainly could not be the duty of the defendant to keep this place closed by a barrier at all times when railroad trains were at rest in front of the station, with a view to guard against the possibility of runaway horses coming along, and breaking through one of the gates which extended across the street. The train itself would effectually bar off all other approach of horses from that direction.

No case has been called to our attention where, under such circumstances, a carrier has been held responsible to one who, though a passenger, was upon the platform or landing place, and was hurt from a cause of this kind, arising entirely outside of the operations of the carrier. In *Smith* v. *Great Eastern Railway*, L. R. 2 C. P. 4, the plaintiff while waiting in the station for a train was bitten by a stray dog, and it was held that there was no evidence for the jury of the defendant's negligence. As to the general duty of carriers, reference may also be made to *Dodge* v. *Boston & Bangor Steamship Co.* 148 Mass. 207 ; *Moreland* v. *Boston & Providence Railroad,* 141 Mass. 31, *ad finem ;* and *Simkin* v. *London & Northwestern Railway*, 21 Q. B. D. 453.

The plaintiff however contends that there was some evidence that the defendant's gate-tenders were negligent in not catching hold of the horse and stopping him. An opportunity to render such a service is so rare, that gate-tenders are not and need not be selected with reference to their fitness to perform it. While it is conceivable that a very quick-witted and active man might have caught hold of the horse as he stopped, the failure of the gate-tenders to do so is such extremely slight evidence of any negligence which could be imputed to the defendant, that the presiding judge was justified in disregarding it altogether. It would not support the burden of proof which rested upon the plaintiff. *Shea* v. *Wellington*, 163 Mass. 364, 372. *Buswell* v. *Fuller*, 156 Mass. 309, 312. *Hillyer* v. *Dickinson*, 154 Mass. 502. *Treat Manuf. Co.* v. *Standard Steel & Iron Co.* 157 U. S. 674. *Herbert* v. *Butler*, 97 U. S. 319. *Commissioners of Marion County* v. *Clark*, 94 U. S. 278, 284. In *Pitts-*

*burgh, Fort Wayne, & Chicago Railway* v. *Hinds,* 53 Penn. St. 512, it appeared that, while a general fight was raging in the rear car of a train, the conductor did not stop the train, or call on the other trainmen or passengers to help stop the fight, but busied himself with collecting fares in the forward cars; and this, of course, was held to show negligence on his part for which the company might be held responsible. This does not apply where the emergency was of so short duration as in the case before us. The duty of a carrier to protect passengers from the violence of other passengers is also considered in *Putnam* v. *Broadway & Seventh Avenue Railroad,* 55 N. Y. 108, 114; *Flint* v. *Norwich & New York Transportation Co.* 34 Conn. 554; *New Orleans, St. Louis, & Chicago Railroad* v. *Burke,* 53 Miss. 200; and *Pittsburgh & Connellsville Railroad* v. *Pillow,* 76 Penn. St. 510.

. Having reference to the accident which happened to the plaintiff, there was no such close connection between it and the condition of the gate as testified to, either at the time of the accident or at the earlier date at which its condition was sought to be shown, as to make the evidence material.*

For these reasons, the case was rightly withdrawn from the jury.

*Exceptions overruled.*

---

* A witness, who was qualified as an expert, and who had made an examination of the gate, testified that the slots in the posts, in which the pulleys attached to each end of the gate travel, were not deep enough; and that, by a pressure on the centre of the gate, the ends of the gate could be pushed out, leaving the gate unsupported except by the chains on which it hung. The plaintiff also offered to show that, four or five months before the accident, the gate was pushed aside by a horse, not a runaway, pressing against it; but this evidence was excluded.