HARRIET F. KUHLEN *vs.* BOSTON AND NORTHERN STREET RAILWAY COMPANY.

Essex.    November 9, 1906. — January 1, 1907.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Carrier*, Of passengers.  *Negligence.  Street Railway.  Subway.  Evidence.*

It is the duty of a common carrier of passengers to select and employ a sufficient number of competent servants to meet any exigency which, in the exercise, of the high degree of diligence and care toward its passengers to which such a carrier is held, it reasonably ought to have anticipated.

In an action by a woman against a street railway company for personal injuries incurred while entering as a passenger a car of the defendant at a station in a subway through which the defendant had a right to operate its cars by permission of the lessee of the subway, if it appears that the injuries of the plaintiff were due to the surging and struggling of the crowd in attempting to get on the car, and there is evidence that at the time of day when the accident occurred there usually was a large crowd in this subway station, and that on many previous occasions there had been the same surging and struggling to get upon the cars as occurred at this time, the jury are justified in finding that the defendant and its servants ought to have anticipated what actually took place and in the exercise of necessary care ought to have taken precautions to give the plaintiff the degree of protection to which she was entitled.

In the trial of an action against a street railway company for personal injuries incurred while entering as a passenger a car of the defendant at a station in a subway through which the defendant had a right to operate its cars by permission of the lessee of the subway, if it appears that the injuries to the plaintiff were due to the surging and struggling of the crowd at an hour when a crowded condition of the station was usual, it is a question for the jury, whether, if in carrying on the defendant's business the crowding of the station platforms and cars at certain hours of the day was unavoidable, the high degree of care which it was bound to exercise toward its passengers did not require as a reasonable precaution the employment of an increased number of men to prevent such jostling and crowding at the entrance of the cars as involved danger to passengers.

At the trial of an action by a woman against a street railway company for personal

injuries incurred in entering as a passenger a car of the defendant at a station in a subway through which the defendant had a right to operate its cars by permission of the lessee of the subway, if it appears that the injuries of the plaintiff were due to the surging and struggling of the crowd at an hour when a crowded condition of the station was usual, and if it further appears that the plaintiff had been in similar crowds at the same station before, had seen the same pushing and struggling and the same failure of the defendant to control the assemblage, and on former occasions had escaped injury so narrowly that in testifying she said "Many a night I have almost got killed," this is evidence to be considered by the jury in passing upon the questions whether the plaintiff was in the exercise of due care and whether she assumed the risk of such an accident as happened to her, but the fact that with the knowledge gained by her experience she joined the general rush to get into the car is not conclusive against her as matter of law upon either of these issues.

At the trial of an action against a street railway company for personal injuries incurred while entering as a passenger a car of the defendant at a station in a subway, the defendant, for the purpose of showing the conditions of its occupation of the subway, offered in evidence an agreement in writing between its predecessor in title and the Boston Elevated Railway Company, by which it contended that it would appear that the subway and the stations in it were constructed by the Boston Transit Commission and were owned by the city of Boston, that the platform at the station where the accident occurred was of the same width and in the same condition as when constructed by the commission, that the Boston Elevated Railway Company operated its cars in the subway under a lease of the subway, that the defendant operated its cars there under permission of the elevated railway company authorized by the Legislature, and that the elevated railway company had the entire management, charge and control of the subway, the stations and platforms, except that it could make alterations therein only by the permission of the Boston Transit Commission. The judge excluded the agreement. The agreement related principally to the pecuniary relations between the parties, but contained a provision that the cars of the defendant's predecessor in title while on the tracks in the subway should be subject to "the rules of the elevated railway company and the reasonable directions of its officials." There was no offer to show what rules, if any, had been established by the elevated railway company, or what "reasonable directions," if any, had been given to the defendant, nor was there any offer to show that the defendant had not been given full power to make whatever police arrangements might be necessary for the proper supervision of any expected crowds of passengers. It was conceded at the trial that the defendant held out the station where the accident occurred as a proper place for its passengers to go to for the purpose of taking its cars. *Held,* that, the plaintiff having gone to the station by the defendant's invitation, the defendant could not be injured by the exclusion of the agreement; that the details of the agreement did not appear to be material to the issues raised at the trial, and its effect if admitted might have been to distract the attention of the jury from the true issues of the case; so that there was no error in its exclusion.

TORT for personal injuries, originally against the Boston Elevated Railway Company and the Boston and Northern Street Railway Company. At the trial the plaintiff discontinued against the Boston Elevated Railway Company and prosecuted

her case against the Boston and Northern Street Railway Company alone.   Writ dated May 19, 1903.

The plaintiff in her amended declaration alleged in substance that on February 18, 1903, she was injured while a passenger in and upon the defendant's premises at the Scollay Square subway station in Boston; that the defendant owned or controlled a station there and that on February 18, 1903, the plaintiff entered that station to take passage on one of the defendant's cars, purchasing and paying for a ticket at the time of entering the station; that the defendant neglected to provide safe and suitable entrances, exits, passages, guards and platforms for passengers, allowed the platform to be overcrowded and obstructed, wholly neglected to take such reasonable precautions as would insure to passengers and those entering such station and cars by invitation of the defendant safe and suitable access to the cars; whereby the plaintiff, being a passenger there by the invitation of the defendant and while in the exercise of due care, by reason of the neglect of the defendant was violently pushed and thrown down upon the steps of the car and was injured about the body and arms and sustained severe internal injuries.

In the Superior Court the case was tried before *Bell*, J.   It was in evidence that the plaintiff lived in Lynn and worked in Boston, and for three months previous to the accident had been accustomed to take a Lynn and Boston car at the subway station at Scollay Square at about six o'clock P. M.; that on February 18, 1903, the day of the accident, in accordance with her custom, the plaintiff paid her fare, entered the subway station at Scollay Square, got upon the car of the defendant and travelled upon it to Lynn; that at the time she entered the car there was a crowd in the subway station, some of whom did not succeed in getting into the car which the plaintiff boarded; that it was a stormy night and the car was fifty minutes late; that the motorman was on the car at least within the car's length from the place of the accident and that he knew nothing about it.

There was no evidence that anybody connected with the defendant saw the accident or saw the plaintiff until she was aboard or in the aisle of the defendant's car.   There was no evidence that anybody connected with the defendant said anything or did anything to prevent the accident except that the conductor

in the vestibule of the car said two or three times, " Don't crowd."

It was in evidence that usually at this time of day there was a crowd in the subway station at Scollay Square and that the Lynn and Boston car leaving the subway at this time of day was unusually crowded; that when the Lynn and Boston car came into the subway station and came to a stop the plaintiff was in the front of the crowd near the edge of the platform where she had been waiting for the car for forty or fifty minutes; that the entire platform was very much crowded and was filled back to the stairs in the subway; that as the car of the defendant came in the plaintiff was pushed toward the rear of the car and the edge of the platform; that as the plaintiff was pushed toward the car she put a small parcel under her arm and a bag on her wrist so that her right hand would be free and she could take care of herself; and that the plaintiff was pushed in the back just like a hammer.

One Ober, a witness for the plaintiff who did not know her, testified that as the car came in the plaintiff was being pushed toward him and toward the rail to the rear of the car, and he thought she would have been pushed over on the rail if he had not put his hand up in front of her and helped her as she was on the platform two or three feet from the rear of the car and close to the edge of the platform; that the car already had stopped; that the witness did not let go of the plaintiff but helped her to the step on the rear of the car.

It further appeared by the bill of exceptions that the plaintiff got upon the first step of the car from the platform of the subway; that when the plaintiff was on the lower step her right hand was on the rail or iron against the rear of the car; that the plaintiff " hollered out " — " you are hurting me "; that at this moment the plaintiff was pushed so that she was helpless; that her knees dragged the other step; that the conductor was standing there and never said a word; that the plaintiff finally was pushed and pushed until she got pushed right into the car; that in the meantime her hand was right on the rail; and that the conductor was leaning on the motor and laughing. The plaintiff knew there always had been such a crush and struggle and that she would have to be particularly careful, that there would be

sure to be a big crush.   The plaintiff testified that there were people in front of her and back of her; that she "was nailed, carried almost"; that the plaintiff was pushed into the car, and a lady got up and gave her seat to the plaintiff; that there was no one to direct passengers and there was no turnstile; that as she went into the subway there was a large crowd; that she had to wait fifty minutes for her car by reason of the cars being late on account of the snow; that during that time the crowd was constantly growing larger so that when the car arrived the crowd was unusually large; that there was nobody there directing the people; that nobody raised his hand and asked the people not to push; that the crowd was surging and pushing violently when the Lynn car arrived.   The plaintiff finally was shoved into the aisle of the car in a fainting condition with an injury that proved to be a fracture of the right wrist.

Other evidence is stated or described in the opinion.

At the close of the evidence the defendant asked the judge to give the following instructions to the jury:

1. On all the evidence the plaintiff is not entitled to recover.

2. The plaintiff was not in the exercise of due care.

3. There is no evidence of negligence of the defendant, its servants or agents.

4. The plaintiff assumed the risk of being jostled and all danger and inconvenience incident thereto when she entered into the crowd endeavoring to get upon the car.

5. In choosing to travel on a street car when the same was crowded, the plaintiff assumed the risk of injury incident to such crowding.

7. If it is not practicable for the defendant to carry on its business without the crowding of its platforms and cars at certain hours of the day, it is not negligence on the part of the defendant to fail to employ a large force of men at those hours to prevent jostling and crowding at the entrance to the cars.

The judge refused to give any of these instructions, and gave other instructions which were printed in the bill of exceptions. The jury returned a verdict for the plaintiff in the sum of $2,000; and the defendant alleged exceptions to the refusal of the judge to give the instructions requested and to the judge's charge so far as inconsistent with these instructions, and also to the exclu-

sion by the judge of an agreement between the Boston Elevated Railway Company and the Lynn and Boston Railroad Company, to whose rights the defendant had succeeded. This agreement is described sufficiently in the opinion.

*S. Parsons,* for the defendant.

*F. D. Allen,* (*W. B. Murphy* with him,) for the plaintiff.

SHELDON, J.   It is the duty of the defendant, as a carrier of passengers for hire, to use the highest degree of care consistent with the nature and extent of its business, not only to provide safe and suitable vehicles for their carriage, but to maintain all such reasonable arrangements for control and supervision both of the passengers and of its own servants as prudence would dictate to guard its passengers, while they occupy that relation, against all dangers that are naturally and according to the usual course of things to be expected.   It is bound to select and employ a sufficient number of competent servants to meet any exigency which, in the exercise of that high degree of vigilance and care to which it is held, it ought reasonably to have anticipated.   This is the unvarying doctrine of our own decisions.   *Treat* v. *Boston & Lowell Railroad,* 131 Mass. 371.   *Commonwealth* v. *Coburn,* 132 Mass. 555.   *Bryant* v. *Rich,* 106 Mass. 180.   *Dodge* v. *Boston & Bangor Steamship Co.* 148 Mass. 207. And its duty to use all proper means and precautions to protect its passengers against injuries caused by the misconduct of other passengers, such as under the circumstances might have been anticipated and could have been guarded against, is no less stringent than the obligation to prevent misconduct or negligence on the part of its own servants.   *Simmons* v. *New Bedford, Vineyard & Nantucket Steamboat Co.* 97 Mass. 361.   *Nichols* v. *Lynn & Boston Railroad,* 168 Mass. 528. · "There is no doubt of the duty of a railroad company to use all such means and precautions as are reasonably practicable for the protection and safety of its passengers, not only from the misconduct of its agents and servants but also of other passengers and of other persons who are not passengers." Allen, J. in *Brooks* v. *Old Colony Railroad,* 168 Mass. 164, 165.   In *United Railways* v. *Deane,* 93 Md. 619, it was held in an elaborate opinion that a passenger on a street railway car could hold the railway company liable for an assault committed upon him by a drunken

and disorderly passenger who had once been put off the car but afterwards had been allowed to get on again and ride without hindrance ; and this upon the general ground that when the servants of a carrier know or have the means of knowing that a disorderly passenger is likely to commit an assault, it is their duty to eject him, as in *Vinton* v. *Middlesex Railroad*, 11 Allen, 304, and their employer is liable for their neglect of this duty if it results in injury to another passenger.  McSherry, C. J., said in this case : " It is just as incumbent on the carrier to protect all his passengers from assault by a fellow passenger when his servants have knowledge or the means of knowing that an assault on some one is imminent and when they have time and means to avert it, as it is to protect all his passengers from injuries likely to result from defective means or methods of transportation." The same general doctrine has been maintained in other jurisdictions, so far as we are aware without exceptions.  *Muhlhause* v. *Monongahela Street Railway*, 201 Penn. St. 237.  *Pittsburg & Connellsville Railroad* v. *Pillow*, 76 Penn. St. 510.  *McGearty* v. *Manhattan Railway*, 15 App. Div. (N. Y.) 2.  *Pittsburg, Fort Wayne & Chicago Railway* v. *Hinds*, 53 Penn. St. 512.  *Flint* v. *Norwich & New York Transportation Co.* 34 Conn. 554 ; *S. C.* 6 Blatchf. 158 ; 7 Blatchf. 536, and 13 Wall. 3.  *New Orleans, St. Louis & Chicago Railroad* v. *Burke*, 53 Miss. 200.  Other cases bearing on the same subject are cited by Loring, J. in *Jacobs* v. *West End Street Railway*, 178 Mass. 116, 118.  The cases of *Thomson* v. *Manhattan Railway*, 75 Hun, 548, *Putnam* v. *Broadway & Seventh Avenue Railroad*, 55 N. Y. 108, *Ellinger* v. *Philadelphia, Wilmington & Baltimore Railroad*, 153 Penn. St. 213, *Graeff* v. *Philadelphia & Reading Railroad*, 161 Penn. St. 230, and *Cornman* v. *Eastern Counties Railway*, 4 H. & N. 781, relied upon by the defendant, either turn upon the proposition that as a common carrier can be held liable for injury done by one passenger to another only upon proof that it has failed to discharge its duty of using the utmost vigilance to maintain order and guard against violence, so it must be shown that the circumstances which called for special action either were known or in the exercise of proper care ought to have been known to the defendant or its servants, or else lay down the rule (perhaps sometimes carried too far) that the carrier is not to be held

liable for a mere breach of courtesy from one passenger to another.

There was evidence that there was usually a large crowd in the subway station at this time of the day ; that there had been on many previous occasions the same surging and struggling to get upon the car as occurred at this time ; and the jury had a right to find, as under the careful instructions of the court they must have found, that the defendant and its servants ought to have anticipated just what actually did take place, and ought in the exercise of the necessary care to have taken reasonable precautions to guard against such injuries as were caused to the plaintiff, and that they were negligent in failing to take such precautions and to give to the plaintiff that degree of protection which she had a right to expect from them. It follows that the defendant's third request for instructions was rightly refused.

Nor could its seventh request have been given. It was for the jury to say whether or not, if the crowding of its platforms and cars at certain hours of the day was unavoidable in carrying on its business, that high degree of care which it was bound to exercise called for the employment of an increased number of men to prevent such jostling and crowding at the entrance of the cars as would involve danger to passengers, and whether or not it was reasonable, in view of the nature and extent of the defendant's business, to require this precaution to be taken.

It could not have been said as matter of law that the plaintiff herself was not in the exercise of due care, or that she had assumed the risk of the injury that was done to her. She had been in similar crowds before, had seen the same pushing and struggling and the same failure on the part of the defendant to control the assemblage ; and she had formerly so narrowly escaped injury that she said in testifying : " Many a night I have almost got killed." With the knowledge gained by this experience, however, she joined in the general rush to get into the car. All these circumstances were important to be considered by the jury in passing upon the question of her due care; and their attention was called to these circumstances by the presiding judge in his charge. But they are not conclusive against her as a mattter of law. The jury might say that in spite of the

failure of the defendant's servants and agents to control the crowd on previous occasions she might depend somewhat on the hope that they would not continue to fall short of their duty. And it is hard to see how the same circumstances which simply require the question of the defendant's negligence to be left to the jury can be conclusive as against the plaintiff to show either that she was negligent or that she assumed the risk. We think that these questions also were for the jury. *Treat* v. *Boston & Lowell Railroad,* 131 Mass. 371. *Simmons* v. *New Bedford, Vineyard & Nantucket Steamboat Co.* 97 Mass. 361. *Gaynor* v. *Old Colony & Newport Railway,* 100 Mass. 208. Accordingly the defendant's first, second, fourth and fifth requests could not have been given.

The subway and this station were built by the Boston Transit Commission, which alone had the power to make or authorize any change therein, and were the property of the city of Boston. The defendant's occupation thereof was either under a lease or merely permissive. St. 1894, c. 548, §§ 23 *et seq.* St. 1897, c. 500, §§ 5, 12. See *Falkins* v. *Boston Elevated Railway,* 188 Mass. 153; *Hilborn* v. *Boston & Northern Street Railway,* 191 Mass. 14. For the purpose of showing the conditions of its occupation of the subway, the defendant offered in evidence a written agreement between the Boston Elevated Railway Company, the lessee of the subway, and the Lynn and Boston Railroad Company, to whose rights the defendant has succeeded; and the only remaining question arises upon the defendant's exception to the exclusion of this agreement, a copy of which is annexed to the bill of exceptions. The defendant refers to the fact that in the case last cited it appeared by the agreement of the parties "that the subway and the stations in it were constructed by the Boston Transit Commission, and are owned by the City of Boston; that the platform at this station is now of the same width and in the same condition as constructed by the Transit Commission; that the Boston Elevated Railway Company operates its cars in the subway under a lease of the subway, and that the defendant operates its cars therein under permission of said elevated company authorized by the Legislature; that the elevated company has the entire management, charge and control of the subway, the stations and platforms,

except that it can make alterations therein only by the permission of the Boston Transit Commission." *Hilborn* v. *Boston & Northern Street Railway*, 191 Mass. 14, 16, 17. The defendant contends that this agreement, if it had been admitted, would have proved in the case at bar the same facts which were agreed upon in that case, and says that it had no control or management of the station and could not have limited the number of persons admitted thereto.

The main purpose of this agreement appears to have been to determine the amount of money to be paid by the defendant for its use of the subway, and to regulate the other pecuniary relations between the parties. The thirteenth clause however provides " that the cars of said Lynn and Boston Company while on the tracks of or leased to the Elevated Company either within the subway or without, shall be subject to the rules and regularities [*sic*] of said Elevated Company and the reasonable direction of its officials." There was no offer to show what "reasonable directions," if any, had been given to the defendant or what rules, if any, had been established by the elevated company. Nor was there any offer to show that the defendant had not been given full power to make whatever police arrangements might be necessary for the proper supervision of any expected crowds of passengers; and if the defendant had such power, it could be held liable under the circumstances of this case. In view of the fact, which appears to have been conceded at the trial, that the defendant held this out as the proper place for its passengers to come to for the purpose of taking its cars, so that its passengers had a right to regard themselves as having come thither by its invitation, we do not see that the defendant was injured by the exclusion of this agreement. The general principle has been established that one who, though not strictly in control of a defective thing or dangerous place, yet uses it for his own benefit or for his own purposes invites another to enter it, may, if other elements of liability concur, be held responsible to the latter for an injury caused by the defect or danger. *Heaven* v. *Pender*, 11 Q. B. D. 503. *Poor* v. *Sears*, 154 Mass. 539. *Carleton* v. *Franconia Iron & Steel Co.* 99 Mass. 216, 218. *Cotant* v. *Boone Suburban Railway*, 125 Iowa, 46. The details of this agreement do not appear to have been at all

material to the issues raised at the trial.  The effect of admitting the agreement might have been to distract the attention of the jury from the real issues of the case.  We find no error at the trial.

*Exceptions overruled.*

