MIRIAM JACOBS *vs.* WEST END STREET RAILWAY COMPANY.
ISAAC JACOBS *vs.* SAME.

Suffolk.     November 22, 1900. — March 1, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

It is not evidence of negligence on the part of a street railway company that one of its conductors standing in the middle of an overcrowded car did not come to the assistance of a woman passenger weighing more than two hundred pounds who was injured while attempting to get through the crowd and alight from the car at a transfer station of the defendant.

In an action by a woman passenger to recover for injuries received in falling to the ground while attempting to alight from an overcrowded street car of the defendant, it was *held*, that evidence that another woman immediately preceding the plaintiff in alighting from the car had her jacket torn as she was pushing her way through the crowd, rightly could be excluded as evidence involving collateral issues and too remote.

*Semble,* that it is the duty of the conductor of a street railway car who is on the rear platform when a passenger is alighting, to see to it that the passenger has an opportunity to alight with safety, and that it is his duty to cause passengers who are blocking the exit to stand aside or even alight from the car temporarily. Per LORING, J.

*Semble,* that passengers who choose to take passage on a street car which is so crowded that they have to stand on the rear platform or on the steps and thereby block the exit from the car, assume all inconveniences incident thereto, including that of temporarily alighting when necessary to allow a proper exit for passengers who wish to get off. Per LORING, J.

TWO ACTIONS OF TORT, one by Miriam Jacobs to recover for personal injuries received in falling from a street car of the defendant while attempting to alight therefrom at Roxbury Crossing in Boston, and the other by the husband of said Miriam to recover for expenses of medical attendance and nursing, and for loss of service.  Writs dated October 22, 1898.

The two cases were tried together in the Superior Court, before *Lawton,* J.  It appeared that the accident happened while

an overcrowded outward-bound car of the defendant was discharging and receiving passengers at Roxbury Crossing between half past five and six o'clock P. M. on February 26, 1896.

The plaintiffs introduced evidence tending to show that at the time of the accident the plaintiff Miriam was approaching the last month of pregnancy; that on the day of the accident she had gone to Boston from Jamaica Plain with two women companions; that the three had taken an outward-bound car between five and five thirty o'clock, P. M., on Tremont Street, in which they went to Roxbury Crossing; that at Roxbury Crossing they left the car; that at that time the car was "terribly crowded," all the seats being filled, two rows of passengers standing in the aisle, and the rear platform also being crowded; that people were standing in the street waiting and trying to get on, as the passengers were alighting from the car; that " there were passengers getting on and getting off "; that there " was a scuffle, a regular scuffle"; that the plaintiff and her companions were among the first of those inside the car to leave the car by the rear platform, the plaintiff being the last of the three; that other passengers were behind the plaintiff also endeavoring to alight; that the plaintiff, while on the rear platform and in the act of leaving the car, struck something over which she tripped; that her foot caught in something and that she was thrown down into the street; that at this time the car was standing still for the purpose of discharging and taking on passengers at a regular stopping place, at which transfer checks were issued; that the conductor was inside of the car, in the middle of the car, at the time the plaintiff was endeavoring to alight; that he stood there while she was alighting; that he did not come to her assistance until after she had fallen, when he assisted her to arise; that by reason of the crowd on the rear platform it was impossible for the plaintiff to get at and use the iron rail at the rear of the car; that the plaintiff's weight at the time of the accident was over two hundred pounds.

The plaintiff, as evidence of the crowded condition of the car, offered the testimony of one of her companions, who preceded her in the effort to alight, that the cloth to which a button was sewed on the jacket of this companion by reason of the crowd was torn from the adjoining cloth as she was pushing her way

through the crowd. The jacket was offered in evidence; but the judge excluded it, and the plaintiff excepted. This same witness was asked what difficulties she had in leaving the car. This question was excluded, and the plaintiff again excepted.

By direction of the judge the jury returned a verdict for the defendant in each action; and the plaintiffs alleged exceptions.

The plaintiffs contended that the judge erred in directing verdicts for the defendant, and that the jury should have been permitted to determine whether or not, upon the evidence presented, it was the duty of the conductor of the car to provide a safe avenue of egress for the plaintiff Miriam, and to render her assistance in alighting, and should have been instructed that in failing to do so he was negligent.

*W. H. Wade & J. M. Merriam,* for the plaintiffs.

*W. B. Farr, (M. F. Dickinson, Jr.* with him,) for the defendant.

LORING, J. This is an exceedingly close case. On the one hand as street cars are run, it is not negligent to take on passengers when all the seats are occupied, when there is no more standing room in the passageway of the car and the new passengers have to stand on the platforms and even on the steps; *Meesel* v. *Lynn & Boston Railroad,* 8 Allen, 234; furthermore a passenger takes the risks incident to the mode of travel he chooses to adopt, as for example the risk of being injured in the removal of an objectionable passenger from a crowded car. *Spade* v. *Lynn & Boston Railroad,* 172 Mass. 488. On the other hand it has been held that a street railway company may be held liable for negligence if it allows its car to be so crowded with passengers that one of them is crowded off a platform while the car is proceeding on its way. *Lehr* v. *Steinway & Hunters Point Railroad,* 118 N. Y. 556. *Reem* v. *St. Paul City Railway,* 77 Minn. 503. *Pray* v. *Omaha Street Railway,* 44 Neb. 167. It has also been held that the duty which a street railway owes to its passengers is not terminated until the passenger has alighted from the car, and covers the time during which the passenger is getting off; and lastly it may be that if an aged woman passenger is pushed off the step by the turbulent behavior of the crowd behind her while she is alighting from the front platform under the very eyes of the motorman, there is evidence of negligence for the jury; *Hansen* v. *North Jersey Street Railway,* 35 Vroom, 686;

and so also when the passenger is jostled by incoming passengers, as in *Buck* v. *Manhattan Railway*, 15 Daly, 48; *S. C.* 276, 550. See in this connection *Treat* v. *Boston & Lowell Railroad*, 131 Mass. 371, 373, where the presence of an excessive crowd on a train on a steam railroad is considered in a case where the train never came to a full stop at the station at which the plaintiff had a right to get off.

In the case at bar there was no evidence that the injury which the plaintiff in the first case suffered was caused by any defect in the platform, but it appeared that it was caused by the plaintiff's tripping over "something" while she was on the rear platform on her way to the street. There was evidence that the crowd on the platform made it "impossible for the plaintiff to get at and use the iron rail at the rear of the car," to steady herself as she was getting off; and it appeared "that the conductor was inside of the car," "in the middle of the car" while the plaintiff was alighting.

It may be conceded in this case that it is the duty of a conductor who is on the rear platform when a passenger is alighting to see to it that the passenger has an opportunity to alight with safety, and that it is his duty to see to it that passengers who are blocking the exit shall stand aside or even alight from the car temporarily; passengers who choose to take passage on a car which is so crowded that they have to stand on the rear platform or on the steps and who thereby block the exit from the car, assume all inconveniences incident thereto, including that of temporarily alighting, when necessary, to allow a proper exit for passengers who wish to get off. It also may be conceded that the conductor's duty requires him when not otherwise engaged to be on the rear platform. But a conductor has duties to perform which take him away from the rear platform, and the greater the number of passengers the longer the time during which it is necessary for him to be absent and properly absent from it. The duty of collecting tickets, for example, being one which cannot always be postponed, is a duty which in a crowded car requires the conductor to be absent from the platform a good deal and for some length of time, and if a passenger wishes to alight while the conductor is so engaged, the inconvenience which she may endure in having to alight without his aid is one of those

inconveniences which the passenger assumes by choosing to travel on a street car at a time of day when it is notorious that such conveyances are crowded.

There is no evidence in the case at bar that this conductor was negligent in being absent from the rear platform when the plaintiff was alighting.    Unless the plaintiff is entitled to go to the jury on the ground that the company should provide some one in addition to the conductor and motorman to care for the car and its passengers, there was no evidence of negligence in this case.    As street cars are run we do not think that the omission to employ a third person could be found to be negligence.

The fact that the place where the plaintiff was getting off is a place where passengers are transferred to other lines makes no difference; no distinction can be drawn between the duties devolving upon a street railway company when stopping at such a place for passengers to alight and those which they have when they stop at other places.    Neither does the fact that the plaintiff weighed over two hundred pounds make a difference; the mere fact that a woman weighs over two hundred pounds cannot make it the duty of the conductor to drop all other duties and help her get off.

Neither is it material that there was evidence that there were passengers "trying to get on, as the passengers were alighting from the car" and " that there ' was a scuffle, a regular scuffle.' " There was no evidence that the plaintiff was jostled by anybody; it appeared that the injury was caused by her tripping over something.

For these reasons we are of opinion that there was no evidence on which the jury could find that the defendant was negligent.

We are also of opinion that the plaintiff's exceptions to the exclusion of evidence must be overruled.    The fact that the cloth to which a button was sewed on the jacket worn by the companion of the plaintiff who got off the car just before the plaintiff fell in attempting to do so, was torn from the adjoining cloth as she was pushing her way through the crowd and by reason of the crowd, was rightly excluded; it is plain that the evidence could have been properly excluded as evidence involving collateral issues and too remote.    *Collins* v. *Dorchester*, 6 Cush. 396.    *Dean* v. *Murphy*, 169 Mass. 413.

*Exceptions overruled.*