HENRY TOMPKINS *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    November 11, 1908. — February 25, 1909.

Present : KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Street Railway. Carrier,* Of passengers. *Passenger. Negligence,* Street railway.

It is reasonable and within the power of a street railway company to make a rule with regard to passengers upon its cars that " Persons riding on the platforms do so at their own risk."

One who, upon attempting to enter a vestibuled electric street car by the front door, finds the car so crowded that he cannot sit or stand inside and therefore remains upon the front platform where also are the motorman and three other passengers, and who temporarily steps from the car to the street to allow passengers from the interior of the car to alight, does not thereby cease to be a passenger on the car.

A street railway company, which has posted upon the front window of its cars a rule that " Persons riding on the platform do so at their own risk," is not liable for personal injuries received by a passenger who, knowing of such rule, remained upon the front platform because of the crowded condition of the car, and who, having temporarily alighted to allow other passengers to leave the car, was injured by being thrown down when the car was started suddenly and with more than an ordinary jerk as he again was getting on.

TORT for personal injuries alleged to have been sustained by the plaintiff by reason of his having been thrown under a car of the defendant when it was started suddenly as he was getting on to it again after having alighted from the front platform to allow other passengers to get off. Writ in the Superior Court for the county of Suffolk, dated January 5, 1906.

The case was tried before *Harris,* J. The plaintiff's evidence

tended to show the following facts : The plaintiff, a boy of fif-
teen, together with a friend, one Meyers, went to the Boylston
Street subway station of the Boston Elevated Railway Company
and there took a car bound for Harvard Square. As the car
came into the subway station they noticed that it was so
crowded that the plaintiff thought he could not have crowded
inside, and consequently boarded the car by the front vestibule
and remained upon the front platform. The car proceeded in the
usual manner out of the subway and along Boylston Street until
it came to Berkeley Street. When the car arrived at Berkeley
Street, there were on the front platform the plaintiff, Meyers,
the motorman and two other passengers. The car stopped at
this point, and two women came from the interior of the car,
intending to alight. The plaintiff and Meyers stepped from the
car to allow them to get off. After they had alighted, Meyers
got on the car, but, when the plaintiff had one foot on the step
and was putting up the other foot and holding on to the grab
iron, the car was started with more than an ordinary jerk and
he was thrown on his back, a wheel of the car passing over the
toes of his right foot. The plaintiff on previous occasions had
noticed the sign of the defendant which is printed on the front
window panes of the car to the effect that passengers riding on
the platforms do so at their own risk, and he testified that he
was familiar with the cars of the defendant company and the way
in which they were equipped and operated.

Other facts are stated in the opinion. The presiding judge
refused to direct a verdict for the defendant. The jury found
for the plaintiff, and the judge reported the case for determina-
tion by this court. If the ruling of the trial judge was correct,
judgment was to be entered on the verdict. If it was wrong, judg-
ment was to be entered for the defendant.

*R. A. Stewart*, (*H. J. Hart* with him,) for the defendant.

*J. P. Magenis*, (*J. B. Boland* with him,) for the plaintiff.

RUGG, J. The plaintiff became a passenger upon a surface
electric car of the defendant so crowded with passengers that he
could not sit or stand inside, and took his place in the front
vestibule. He knew of the rule of the defendant printed on
the car, that " Persons riding on the platforms do so at their
own risk." Before his journey's end the plaintiff stepped off

the car in order to enable some ladies to alight, and as he was trying to get on again he was injured by the car's being started suddenly and with more than an ordinary jerk.

The rule referred to was a reasonable one and within the power of the defendant to make. *Burns* v. *Boston Elevated Railway*, 183 Mass. 96. *Montgomery* v. *Buffalo Railway*, 165 N. Y. 139.

The plaintiff by voluntarily becoming a passenger upon a car so crowded that he could not get inside took the risks incident to transportation under these circumstances. One of these was that of temporarily alighting for the purpose of permitting other passengers to get off the car conveniently. *Jacobs* v. *West End Street Railway*, 178 Mass. 116. It has been argued by the plaintiff that his relation as passenger thereby ended. If this should be held, then it did not become re-established, for there was no evidence from which it could be found that the plaintiff gave any notice of such intention on his part to those in charge of the car, or that they knew of any such intention or effort or offer on his part to that end or that they accepted him as a passenger. *Hogner* v. *Boston Elevated Railway*, 198 Mass. 260.

But the plaintiff did not cease to be a passenger by leaving the car momentarily for this cause. He could not have been required to pay a new fare. The necessity or courtesy which prompted his action did not terminate his status as passenger. It is notorious that this is one of the common incidents of travel during rush hours. The acceptance of passengers upon cars, so crowded already, created an implication on the part of the defendant that, although some passengers might be obliged for an instant to step to the street for the accommodation of their fellows, the contract for carriage should not thereby be terminated. The plaintiff by taking his position on the front platform of such a car also impliedly contracted with reference to the same obligation resting on him. But he contracted subject to the rule of the defendant that he took all risks from riding on the front platform. One of these risks under the known conditions was that he might for a moment step off the car and get on again. Under the terms of his contract of carriage he took upon himself the consequences of injury ensuing from this act. Riding "at his own risk" could mean nothing

less than at the risk of dangers resulting from the negligence of the defendant or its servants.   The defendant was in any event, apart from the rule, responsible for no other risks than those arising from its own failure or that of its agents to exercise the highest degree of care as to passengers consistent with the reasonable conduct of its business.   It was not an insurer of the safety of its passengers.   Hence in order to give any effect to the rule, which under the circumstances became a term of the contract between the plaintiff and defendant, it must be held to exonerate the latter from all injuries which the plaintiff might receive while a passenger upon the front platform.   A verdict should therefore have been ordered for the defendant. *Hosmer* v. *Old Colony Railroad*, 156 Mass. 506.   *McDonough* v. *Boston Elevated Railway*, 191 Mass. 509.   *Pike* v. *Boston Elevated Railway*, 192 Mass. 426.

In accordance with the terms of the report the entry must be

*Judgment for the defendant.*