MABEL S. McCUMBER *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk. December 9, 1910. — January 6, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Street railway. *Street Railway.*

A woman, who voluntarily becomes a passenger upon a street car so crowded that she knows that she cannot get a seat and may be obliged to stand in the vestibule, assumes whatever obligation and risk are incident to the crowded condition of the car.

In the present state of transportation facilities it is not negligence for a corporation operating a street railway to permit passengers to come upon its cars when they already are crowded.

In an action, by a woman against a corporation operating a street railway, for personal injuries caused by being pushed by a stream of alighting passengers from the rear platform of a crowded car of the defendant on which the plaintiff was a passenger, if it appears by the plaintiff's testimony that the car was excessively crowded and that the plaintiff was standing in the doorway between the body of the car and the vestibule with one foot in the doorway and the other in the vestibule, that she knew by the ringing of the bell and the diminishing speed of the car that persons inside were intending to get out, that she saw them begin to push their way to the door or move down the car "as they always do," and that the conductor, who was standing inside the car collecting fares near the plaintiff, told the plaintiff that she was blocking the passageway and that she must make room for the other passengers to alight, that she tried to push

back into the vestibule, but that it was so crowded that there was no room for her there, that persons on the step and a man beside her got off and left a narrow passageway, and that while she was turning around and trying to see what she could do the crowd surged against her, and she felt herself going off the car, there is no evidence for the jury of negligence on the part of the defendant.

In an action, by a woman against a corporation operating a street railway, for personal injuries caused by being pushed by a stream of alighting passengers from the rear platform of a crowded car of the defendant on which the plaintiff was a passenger, where it appears that the plaintiff was standing directly in the doorway between the body of the car and the vestibule through which the passengers were obliged to pass in alighting, so that the other passengers could not pass unless she moved, and that the conductor told her that she was blocking the passageway and must make room, it is proper for the presiding judge to refuse to permit the plaintiff to testify that the tone of voice in which the conductor told her that she was blocking the passageway and asked her to move was harsh and loud, and caused her to be agitated and mentally disturbed, because perturbation of mind produced solely by the inflection of a voice in the course of necessary speech, unaccompanied by threat of speech or gesture, is not an element of liability.

TORT for personal injuries alleged to have been sustained by the plaintiff while a passenger on a closed surface car of the defendant on December 19, 1905, on Huntington Avenue in Boston near its junction with Massachusetts Avenue, by reason of the excessive overcrowding of the car permitted by the servants of the defendant and the entrance and exit of passengers to and from the car while in its greatly overcrowded condition, whereby the plaintiff was forced from the car and caused to fall to the ground.   Writ dated March 16, 1906.

In the Superior Court the case was tried before *Harris,* J. The plaintiff appears to have been the only witness.   The defendant admitted that, on the day of this accident and on other days before and since, the passengers on this line of cars, as well as on other lines of cars and as well as on this particular car, had crowded into platforms and had been transported there in large numbers.

" The jury had a view."   The record does not state whether the view was of the place of the accident or of the car on which it occurred or of both.

The judge instructed the jury as follows : " The contention is, of course, that this was a crowded car, and by the movement of the passengers the plaintiff was perhaps forced off the car, or slipped, or anyway was forced.   I do not understand it to be the law yet that it is negligence to have a crowded car.   It is one of

the incidents of our American methods of travel that when we go into a crowd, which crowd is not one which is disorderly and turbulent — I mean behaving in any unusual way — we all have to take those things into account, and, so long as it is not negli- gent to carry a crowd, and nothing happens except one of those things which is a very natural and ordinary incident to being in a crowd, it does not lay the foundation for an action of damages."

The judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*C. E. Tupper*, (*A. F. Tupper* with him,) for the plaintiff.

*W. G. Thompson*, (*G. E. Kimball & F. D. Putnam* with him,) for the defendant.

RUGG, J. The plaintiff with a dress suit case in her hand became a passenger on one of the defendant's closed surface cars after dark on a December day. When she boarded the car she perceived that it was crowded, and she was able to get only to the door leading from the vestibule to the aisle. Later she gave way for the conductor to go inside to collect fares, and thereafter she stood just in the doorway, with one foot in the doorway and the other in the vestibule. After one stop, at which other passengers came upon the car, the plaintiff knew by a bell and the slowing of the car that persons inside were intending to get out, and she saw them begin to push their way to the door or move down the car " as they always do." The conductor, who was near the plaintiff, but inside the car collecting fares, told her she was blocking the passageway, and that she must make room for the other passengers to alight. There was some conflict in the plaintiff's testimony after this point. She said she tried to push back into the vestibule, but it was so crowded there was no room for her there, that people on the step and a gentleman beside her got off 'and left a narrow passageway, and while she was turning around and trying to see what she could do the crowd surged against her, and she felt herself going off. In answer to the question, " How did you expect those people, who wanted to get off that car . . . at that stop, could get by you, standing, filling up that door," she testified " That was the conundrum." Other portions of her testimony tend to show that she thought other men would get off the vestibule or that the

conductor would make room for her by compelling persons to move up inside the door. It is impossible to understand how she could have reasonably entertained the latter opinion, in view of her own observation as to the number of people there.

The plaintiff voluntarily and intelligently became a passenger upon a car so crowded that she could not get a seat, and knew that perhaps she might be obliged to stand in the vestibule. This was not negligence on her part, but by doing so she assumed whatever obligation or risk was incident to that condition. One of these might be to alight temporarily in order to enable other passengers to leave the car. It is not negligence on the part of a carrier in the present state of transportation to permit passengers to come upon cars which are already crowded. *Jacobs* v. *West End Street Railway*, 178 Mass. 116. *Tompkins* v. *Boston Elevated Railway*, 201 Mass. 114. It was the duty of the defendant to exercise the highest degree of care toward the plaintiff as its passenger, which was consistent with its equal duty to all its other passengers of transporting them and affording them a reasonable opportunity to alight at the end of their journey. It owed the plaintiff no higher or more exclusive duty than it owed each one of its other passengers on the car. There is nothing in the evidence to indicate that the passengers inside the car were turbulent or disorderly in any respect. They were simply trying to move to the door in the ordinary way in order to get off the car. It is plain from the testimony of the plaintiff that the narrow door of the car was completely obstructed by her person, and that other passengers could not pass unless she moved. The conductor in the performance of what appears to have been his obvious duty to other passengers told the plaintiff she was blocking the passageway, and that she must make room. In this respect he did not fail in his duty to the plaintiff. The plaintiff does not show any conduct on the part of other passengers which would naturally have caused a careful conductor to apprehend violence or disorder on their part or disregard by them of the rights of the plaintiff as a fellow passenger. That there was some pushing in the effort to pass the plaintiff is not significant. It is only when done in a disorderly way that it becomes of consequence. Hence there was no evidence of negligence on the part of the defendant. The case is fully cov-

ered in principle by *Jacobs* v. *West End Street Railway*, 178 Mass. 116. *Treat* v. *Boston & Lowell Railroad*, 131 Mass. 371, *Kuhlen* v. *Boston & Northern Street Railway*, 193 Mass. 341, and *Beverley* v. *Boston Elevated Railway*, 194 Mass. 450, are distinguishable in that they relate to failure to properly control crowds of people under circumstances such that the carrier ought reasonably, in the exercise of the high degree of care required of it, to have anticipated violence.

Exception was taken to the refusal of the trial court to permit the plaintiff to testify that the tone of voice in which the conductor told her she was blocking the passageway and asked her to move was harsh and loud with the result that she was agitated and mentally disturbed. The language used was proper in form and substance and in the performance of duty. It was unaccompanied by threat of speech or gesture. Perturbation of mind which inevitably depends upon individual peculiarities of experience, sensitiveness and nervousness, and fluctuates in the same person with varying conditions of health and happiness, and which is attributed solely to the inflection of voice in the course of necessary speech, is too unstable a foundation upon which to rest a standard of legal liability in a case of this kind. See *Beal* v. *Lowell & Dracut Street Railway*, 157 Mass. 444.

*Exceptions overruled.*