Johanna Walsh, Appellee, v. Chicago Railways Company, Appellant.

Gen. No. 24,756.

1. CARRIERS, § 345*—*when street car company liable for injuries to alighting passenger.* Where a woman becomes a passenger and obtains a seat in an uncrowded street car and, when approaching her destination, the car meanwhile having become overcrowded, undertakes to get off and in doing so is shoved and pushed and practically involuntarily carried along and finally, against her will, is thrust out on the street and injured, the carrier is liable.

2. CARRIERS, § 290*—*liability for results of overcrowding street car.* The court will take judicial notice of the well-known characteristics of human nature, such as the haste, impatience and anxiety of passengers in a street car seeking to alight when they arrive at their destination, and carriers are bound to know and conduct their

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number,

business with such characteristics in mind, so that they must be held responsible for results which reasonably might be anticipated when too many passengers are accepted.

3. CARRIERS, § 345*—*when tort of passengers does not affect street car company's liability for injuries to alighting passenger.* The fact that the tort of passengers in pushing off a crowded street car takes place concurrently with the carrier's conduct in permitting the car to be overcrowded will not alter or lessen the carrier's liability, when injuries result to a passenger seeking to alight.

4. CARRIERS, § 479*—*when verdict finding street car company guilty of negligence as to alighting passenger will not be set aside.* A verdict of a jury finding a street car company guilty of negligence when a passenger attempting to alight was pushed off the car and injured because of the crowded condition of the car, will not be set aside although the plaintiff's testimony is directly contradicted by that of employees of the street car company.

5. APPEAL AND ERROR, § 1645*—*when use in instruction of phrase "one credible witness" is harmless.* The use of the phrase "one credible witness" in an instruction given in a personal injury case is not improper where a number of other instructions state the law accurately as to credibility of witnesses and the effect of the testimony of a number of credible witnesses.

THOMSON, P. J., dissenting.

Appeal from the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Affirmed. Opinion filed January 28, 1920. Rehearing denied February 11, 1920.

HARRY P. WEBER, GEORGE W. MILLER and ARTHUR J. DONOVAN, for appellant; JOHN R. GUILLIAMS and WARNER H. ROBINSON, of counsel.

THOMAS E. ROONEY and FERDINAND GOSS, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal from a judgment entered in the circuit court on April 7, 1918, for $1,800, in favor of the plaintiff and against the defendant in an action on

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the case brought to recover damages for injuries claimed to have been sustained by the plaintiff on July 10, 1914, when she undertook to get off a northbound Halsted street car at or near the intersection of West 12th and Halsted streets, Chicago.

There are two counts to the declaration. The first count alleges it was the duty of the defendant to use all due care and caution and to safely carry the plaintiff and prevent the overcrowding of its car but that the defendant failed and negligently, carelessly, improperly and recklessly suffered and permitted· the overcrowding of the car and of persons who were then and there on said car, and that while the car was there on Halsted street, at or near the intersection of West 12th street, and while the plaintiff was using due care, certain persons, who were then and there upon the car did, by reason of the overcrowding of the car, run upon and against and pushed her out of the car and down to and upon the ground, causing her to be injured.

The second count alleges that it was the duty of the defendant to use all due care in carrying her while a passenger, but that the defendant so negligently, carelessly, improperly and recklessly drove, managed and operated the car in which she was a passenger, that, while she was in the exercise of due care, she was thrown upon divers portions of said car and down to and upon the ground, causing her to be injured. The defendant filed a plea of the general issue.

The plaintiff is a woman, and at the time of the injury was about 57 years of age. She boarded the northbound car in question at 63rd and Halsted streets. At the time she became a passenger there were quite a number of empty seats. She took a seat about a quarter of the length of the car from the rear, being three or four seats from the rear door.

The evidence of the plaintiff concerning the occur-

rence in question is substantially as follows: That she lived at 3642 Arlington street, was a dressmaker by profession, earning from $12 to $14 a week; that on July 10, 1914, in the latter part of the afternoon she became a passenger of the defendant at 63rd and Halsted streets, on a through route car, and occupied a seat about three or four seats from the rear; that at that time there were a number of vacant seats; that at 39th and Halsted streets, the car became crowded with men from the stockyards; that her destination was 12th street, and when the conductor called that street she got up to get off; that when she got up she could not get to the door; that there was such a crowd it pushed her all the way from her seat to the door; that there was no space to walk in; that the crowd was so close they were walking on her and pushed her from her seat to the door; that, when she got to the platform, she had no room, was pushed out from the platform into the street; that she tried to prevent herself from being pushed off the platform by pushing back, but there was no room; that the crowd was nearly all men, trying to push out; that she was trying to get off, but does not remember whether she stepped on the front step before she went down; that she fell or sank to the pavement and was injured.

The defendant called as witnesses the street car conductor, the motorman and the supervisor. It is the evidence of the conductor, Bush, that the accident occurred about 6:03 in the evening; that he was standing within the railing on the rear platform; that when he reached 12th street there were about seventy-five people on the car; that some were standing up, but none standing up on the rear platform; that the car was stopped at 12th street; that about eight or ten people got on and about the same number got off; that he rang the bell to go ahead; that the car started across the street; that just as the car was on the crossing the

plaintiff came out and said: "Is this 12th street?" that he told her it was; that she then said, "Stop the car please, I want to get off"; that he rang the bell and the motorman stopped the car on the north side of 12th street; that he let her off and while she was getting off some one jumped on the car; "I don't know if he pushed against her or not, but the lady fell"; that no one else was getting off at that time; that he got off and picked her up and walked with her towards the sidewalk; that at that moment the supervisor came and took charge of her. On cross-examination he testified that although the passengers on this car were mostly working men they got on all along the street and not at the stockyards.

It is the evidence of the motorman that at the time in question there were about nine people on the front end of the car; that he stopped the car on the south side of 12th street and let off a couple of men from the front end; that he did not know anything about who got off the back end; that after he started up and was about in the center of 12th street the bell rang and he stopped the car on the north side of 12th street; that he got off and went back to where the conductor was talking with an old lady; that the supervisor came and told them to go ahead with their car, which they did.

The evidence of one Madsen, a so-called supervisor, was to the effect that seeing the cars were not going regularly he went from where he was to 12th and Halsted streets and there found the northbound car on the north side of the street, and that the cause of the delay was, the plaintiff claimed that she had fallen down; that she was on the sidewalk with the conductor when he first saw her; that he talked with her and then took her over to the drug store and stayed there until she was taken away.

The cause was tried before a jury and a verdict

recovered and judgment entered in the sum of $1,800.

Where a woman becomes a passenger and obtains a seat on an uncrowded street car and when approaching her destination, the car meanwhile having become overcrowded, undertakes to get off and in doing so is shoved and pushed and practically involuntarily carried along and finally, against her will, thrust out on the street and injured, is the carrier liable? We are inclined to answer in the affirmative. In *McCumber v. Boston El. R. Co.*, 207 Mass. 559, the court held that where one "voluntarily and intelligently became a passenger of a car so crowded that she could not get a seat, and knew that perhaps she might be obliged to stand in the vestibule," that it was not negligence on her part, "but by so doing she assumed whatever obligation or risk was incident to that condition." The instant case is distinguishable from the *McCumber* case, *supra,* and may be said to be somewhat parallel with that of *Kordick v. Chicago Rys. Co.*, 187 Ill. App. 74. The instant case differs from the *Massachusetts* case in that here, when the plaintiff got on, she was able to get a seat and the car was not crowded but became so afterwards, and before it reached her destination. In the *Kordick* case, *supra,* the passenger boarded a crowded street car and stood on the rear platform near the step and the court said: "Whether or not the car in question was so overcrowded as to endanger the safety of the passengers and whether or not appellant was negligent in permitting the car to become so overcrowded, were questions of fact properly submitted to the jury," etc. In *Knaisch v. Joline,* 138 N. Y. App. Div. 854, 123 N. Y. Supp. 412, as in the instant case, the car became crowded after the plaintiff became a passenger. In that case when the passenger undertook to get off, she obtained a position on the platform next to the step, and while in that position, and before the car had reached its stopping place, "she was pushed from the car by another passenger, ap-

parently endeavoring to push his way through the crowd on to the platform preparatory to alighting." The court said: "There can be no doubt that the jury may find negligence from such overcrowding of cars as exposes the passengers to danger."

The habits of passengers are well known. When they are nearing their destination, they become impatient and hasten towards the exit, each trying, more or less, to get ahead. If the car is crowded, confusion and anxiety make them push and surge towards the exit. We take judicial notice of the well-known characteristics of human nature. Carriers have the same knowledge and are bound to conduct their business with those characteristics in mind. If, in the face of such knowledge, they accept too many passengers, they must be held to be responsible for any result which reasonably ought to have been anticipated.

Counsel for the defendant argues that the crowding and pushing off of the plaintiff was the result of the voluntary conduct of the passengers and that the defendant ought not to be held responsible; that it is only liable in case of overcrowding where the movements of the passengers that cause the injury are involuntary, e. g., where they are swayed by the movement of the car. That argument gives rise to the question whether the crowding was the proximate cause of the accident, and whether the causal connection between the crowding and the accident was not broken by the negligence of the other passengers? The answer seems to be that, as the tort of the passengers took place concurrently with the carrier's conduct in overcrowding the car, their wrong cannot reasonably be said to alter or lessen the defendant's liability.

It would seem, therefore, that where a carrier permits a car to become overcrowded after one becomes a passenger and so brings about such a dangerous condition that the passenger while in the exercise of care and, in undertaking to get off, is carried out,

partly voluntarily and partly involuntarily, and so controlled by the movements of the people on the car that she is pushed along and off onto the street against her will and injured—the car meanwhile being at a standstill—it has not afforded the passenger a reasonable opportunity to alight and so has failed to exercise that high degree of care for her safety which the law requires.

We are of the opinion that the first count of the declaration, therefore, stated a good cause of action.

As to the conflict in the testimony between that of the plaintiff on the one hand and that of the motorman and conductor on the other, it is impossible, of course, to reconcile the story of the motorman and the testimony of the plaintiff. He says that she got off the car on the north side of 12th street; that while doing so some one jumping on the car pushed against her and she fell, and that no one else was getting off at that time. The jury evidently believed the testimony of the plaintiff.

In weighing the evidence we are bound, of course, to consider that the motorman and the conductor were both employees of the defendant. We consider the testimony of the supervisor as practically negligible because he was not present until after the injury occurred. Considering all the evidence, that the facts testified to by the motorman and the conductor are diametrically opposed to those testified to by the plaintiff; that the defendant's witnesses at the time of the occurrence were employees of the defendant; that it was highly improbable that there should be a prospective passenger waiting on the north side of 12th street, just at the right place, to get on, and that it was highly improbable that the conductor would stop merely at the request of a passenger, we are of the opinion that we are not justified in overruling the verdict of the jury.

It is contended by the defendant that error was com-

mitted in the giving and refusing of certain instructions. Four instructions were given for the plaintiff and thirteen for the defendant. Obviously the first instruction complained of, being that numbered 3 and which was refused, was improper, as it did not state the law as we have stated it in this opinion. The second instruction complained of is that numbered 5. It was not improper in our opinion to use the phrase, "one credible witness," especially in view of the fact that instructions numbered 11, 12 and 16 stated the law very appositely on the subject of credibility and as to the effect of the testimony of a number of credible witnesses. The next instruction complained of is numbered 6. That instruction, we are of the opinion, was proper, especially in view of instruction numbered 9, given on behalf of the defendant.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE THOMSON dissenting: I am unable to concur in the decision reached in this case by the majority of the court. In my opinion the verdict is against the manifest weight of the evidence. In the foregoing opinion it is said we are bound to consider that the motorman and conductor were both employees of the defendant. The record shows that at the time of this trial the witness Bracken, who was the motorman of the car in question, was not an employee of the defendant but was an automobile mechanic in the employ of a concern known as Fullerton Brothers. Furthermore, so far as he knew about the facts, the testimony of the supervisor Madsen corroborated that of the conductor and of Bracken.

I am also of the opinion that the giving of instruction numbered 5 was reversible error. It does not state the law correctly or accurately. Worded as it is, the giving of the instruction was peculiarly prejudicial to

the defendant, in view of the number of occurrence witnesses testifying on each side.