*Municipal Court of the City of Boston*

No. 488256

**SU-MARK, INC.**

v.

**AETNA CASUALTY AND SURETY CO.**

(December 11, 1959 - February 4, 1960)

*Present:* Adlow, C.J., Gillen & Glynn, JJ.

Case tried to *Shamon, J.*

*Adlow, C. J.* Action of contract based on a policy of insurance.

On February 15, 1957 the Aetna Casualty and Surety Company, hereafter referred to as the insurer, issued a policy to Su-Mark, Inc. of Watertown, Massachusetts, hereafter referred to as the assured, wherein the coverage provided by the policy was set forth as follows:

"Property Insured.

1. This policy insures stock in trade consisting only of stock model outboard motor boats and stock model outboard motors, the property of the assured or the property of others for which the assured may be liable, including the assured's interest in the property for labor performed and materials expended thereon.

Property Excluded.

2. This policy does not insure:

(A) Property sold by or under encumbrance to the assured, after delivery to customers.

(B) Property while in the course of manufacture.

(C) Property in transit except while on vehicles of the assured.

(D) Any property described herein while waterborne.

(E) Any property described herein while being used as a public or livery conveyance for carrying passengers for compensation; or used in any illicit or prohibited trade or transportation; or while being operated in any official race or speed test."

A rider annexed to the same policy and marked "Endorsement No. 1" provided:

". . . this policy is extended to cover the property insured

herein while being demonstrated, provided the assured or a regularly employed qualified employee shall be in complete charge and control of such demonstrations . . ."

*There was evidence that* on July 20, 1957 an agent of the plaintiff directed one of its employees to take one of the plaintiff's boats to Barnstable for a demonstration; that he proceeded to Barnstable by crossing Massachusetts Bay; demonstrated the boat to several customers over a period of several days; and while returning to Watertown, on July 28, when opposite Manomet, struck a submerged object and sank, resulting in a total loss.

In this action to recover for the loss the court ruled that the loss suffered by the assured was not covered by the policy and found for the defendant, and the sole issue is whether this loss occurred while the boat was being demonstrated.

In construing policies of insurance consideration must be given to the fair and reasonable meaning of the words in which the agreement of the parties is expressed. Where a doubt arises by reason of ambiguity, the court will resolve the doubt against the insurer and in favor of the assured. While this rule of construction may appear harsh, it is justified from the fact that the contract is drawn by the insurer who from his experience is presumed to know the various contingencies from which risks arise, and on the basis of this knowledge to properly define the limits of his responsibility. *Koshland v. Columbia Ins. Co.,* 237 Mass. 467, 471-472.

In the main body of the policy in issue the insurer has expressly enumerated the risks which are not covered by this policy. Among these is the provision excluding from coverage property while waterborne. The rider to the policy dated May 15, 1957, and labelled Endorsement No. 1 provides coverage to the property insured "while being demonstrated". As it is inconceivable that a motor boat can be demonstrated in any other way than on water, it necessarily follows that the endorsement, which became effective on May 15, 1957, made an exception with respect to the provision against coverage of property while waterborne. (See clause (D) of provisions for Property Excluded in policy.)

It is the contention of the insurer that the rider on the policy covers only risks encountered while the property is being actually demonstrated. But the word "actually" has not been used in the policy in issue as it was used by the insurer in *Koshland v. Columbia Insurance Company,* where the court was called upon to construe the phrase "actually in transit". (237 Mass. 467, 475). The fact that insurers have used the term "actually" in certain types of coverage would indicate that the failure to so clearly define the risk tended to confer on its undertaking a broader significance.

In attempting to define the limits within which liability for risks taken continues, the courts have included within the scope of the risk injuries resulting from acts incidental to the furtherance of the main

purpose of the undertaking. Thus a passenger who steps off a crowded car to allow other passengers to alight does not cease to be a passenger. *Tompkins v. Boston El. Ry.,* 201 Mass. 114. Where a passenger of a street car was obliged to cross private property in order to reach another car and resume her trip, the change being due to a temporary obstruction of the highway, and the passenger was injured while crossing said property, she retained her character as a passenger with respect to the street car company. *Powers v. Old Colony St. Ry.,* 201 Mass. 66; *Curley v. Springfield St. Ry.,* 206 Mass. 534; See also *Koshland v. Columbia Ins. Co.,* 234 Mass. 467, 472-473.

In construing the language used in this contract we must consider what the reasonable expectations of the assured were in providing coverage for his risk. To accept the theory of the insurer is to concede that there would be a considerable period during which the assured would be exposed to the hazard of loss. There is nothing in the policy defining the area within which the demonstration had to take place. Above all, the care used by the insurer, in strictly defining the limits of its liability with respect to risks while on land, would indicate that had the insurer desired to limit the range of its liability it would have done so by express words.

The process of going to and coming from the place of demonstration was incidental to the main purpose of demonstration. No demonstration could take place without it and

the insurer had full knowledge of the contingency. What is more, there is nothing to indicate that the risk was any greater by reason of the trip than it would be if a prospective buyer were in the boat at the time the damage occurred. In the opinion of the *majority* of this Division the loss was covered by the policy.

Whether the act of demonstrating the craft in the waters of Massachusetts Bay was reasonable in view of its size is a question which appears to have been ignored by the parties in view of the other issues which were considered conclusive. However, the *majority* of this Appellate Division feels that this issue is a vital one and the order must be

*Finding for the defendant vacated. New trial ordered.*

*Gillen, J.* dissents: I think the demonstration here was the showing of the boat at Barnstable in the view of Van Duzen and his customers. I do not think the policy exception covered the property on the trip from Barnstable to Watertown after the demonstration.

It is only by the exception that the plaintiff has a semblance of a claim for recovery. Apart from this the policy is "tight" and "hard" — it would seem to cover the boat only when it was on land. It specifically denies liability when the boat is "water-borne" (apart from the exception).

I do not think the said exception covers the boat on the long water trip to or from the situs of the demonstration.

Morrison, Mahoney & Mullen of Boston, for the Plaintiff.

William F. Callahan of Boston, for the Defendant.