# South Covington & Cincinnati Street Railway Company v. Harris.

(Decided March 13, 1913.)

## Appeal from Kenton Circuit Court
## (Criminal, Common Law and Equity Division).

1. Street Railroads—Crowding of Cars—Liability for Injury to Passengers.—When a carrier permits its car to become so crowded with passengers as that those wishing to alight at a station can not do so without pushing and crowding a passenger, who does not desire to alight, to such an extent as to cause him to be thrown or shoved from the car, it will be liable in damages.

2. Street Railroads—Degree of Care to be Exercised with Respect to Passengers.—A street car company as a carrier of passengers must exercise the highest degree of care practicable and consistent with the proper conduct of its business to insure their protection from injury while being carried, and this duty extends to and embraces everything that may happen during the carriage that the carrier can prevent by exercising this high degree of care.

3. Street Railroads—When Not Liable For—Injury Caused by Misconduct of Passengers in Getting Off Car.—A street railroad company is not to be held liable for a wrong done or an injury inflicted by the act of a passenger that could not be reasonably anticipated by the servants of the carrier charged with the duty of protecting its passengers from injury, and if a passenger, in alighting from a not overcrowded car, should push or shove another passenger, causing him to sustain injury, the carrier will not be liable.

4. Street Railroads—Overcrowded Car—Injury to Passenger by Crowds Getting Off.—When a carrier permits a car to become overcrowded with passengers, it assumes the obligation of exercising the highest practicable degree of care to prevent a passenger from being injured by the pushing and crowding of other passengers at points where it may reasonably expect large numbers of passengers to get off, and is chargeable with knowledge of the habits of crowds of passengers and their indifference of the rights of others when they are in a hurry to get off at terminal or transfer points established by it.

5. Trial—Misconduct of Jury.—Where a jury, after considering a case, came into open court and stated to the judge that they had agreed to find a verdict but could not agree upon the amount, and were then directed by the judge to further consider the case, this publicity by the jury of what happened in the jury room was improper, but as it does not appear that the parties to the suit had any connection with it or that the rights of the complaining party were prejudiced, it is not grounds for reversal.

ROBERT C. SIMMONS for appellant.

B. F. GRAZIANI for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In January, 1911, the appellee, a colored woman, was pushed or thrown from one of the appellant company's cars in which she was riding as a passenger. Charging that the accident and resulting injury was due to the negligence and carelessness of the company, she brought this suit to recover damages, and on a trial a judgment in her favor for $1,500 was entered.

It appears from the evidence in behalf of appellee that she boarded the car early in the morning at Ninth and Greenup Streets, in Covington, for the purpose of going to Cincinnati, that when she got on, the car was well filled both on the inside and on the platform, but there was some standing room in both places; that when she went to the door for the purpose of going inside the car she asked the conductor, who was standing in the door, to let her in, two or three times, but he paid no attention to her request, and being unable to get in the car, was compelled to remain standing on the platform; that after she boarded the car it stopped several times to let on passengers before reaching a point on Court Avenue in Covington, at which the car stopped for the purpose of transferring passengers to other local cars before proceeding on its way to Cincinnati; that when the car got to the transfer station it was crowded with passengers on the inside and on the platform, and the passengers on the platform had so completely surrounded appellee that she could not move in any direction; that when the car stopped at the transfer station a crowd of passengers got off in a rush, for the purpose of getting on other cars that were standing ready to start, and about the time these passengers were getting off the car on which she was riding was suddenly started with a jerk, and the jerk of the car, together with the pushing and crowding of the passengers in their efforts to get off, caused her to be thrown from the platform to the street.

There is really little contradiction in the evidence as to the fact that the car and the platform was awfully crowded, and it is clear that there was a rush of the passengers to get off at this transfer station, and that in this rush appellee, in some way, was pushed or thrown by them from the platform.

The case for appellee was put on the ground that the pushing and crowding of the passengers in their efforts to get off, together with the sudden jerk of the car, caused

her to be thrown off, and that the company was negligent in jerking the car, and also in permitting it to become so crowded as that the passengers in getting off almost necessarily pushed or shoved her from the platform; while the theory of the railway company is that there was no unusual or unnecessary jerk of the car, and that appellee, who was standing on the platform, was pushed from it, without any fault on its part, by passengers getting off the car, for whose acts it was not responsible.

We may at this point say that there is no evidence that appellee was guilty of any negligence, and, omitting further reference to the jerk of the car, it is evident that she was pushed or crowded off the rear platform, on which she was standing when the car stopped at the transfer station, by the passengers in their hurry to get off the car, which was crowded to its utmost capacity of standing room both on the inside and on the platform.

Viewing the case from this standpoint, the question for our decision is, did the company commit a breach of the duty it owed appellee in permitting the car to become so crowded as that passengers, in an effort to get off at this station were almost necessarily compelled to push and crowd and shove appellee, who did not want to get off, to such an extent and with such force as to cause her to be pushed or thrown from the platform?

It is argued by counsel for the company that the carrier should not be made responsible in damages for the acts of a crowd of passengers, who, in their hurry to get off a car, unintentionally or purposely, it matters not which, push or crowd another passenger, who does not wish to get off, from the platform. It is said that when the carrier has furnished a sufficient and properly equipped and operated car it is under no duty to anticipate that passengers in getting off the car will injure another passenger, and that if a passenger is injured by the acts of other passengers in getting off the car, the carrier is not liable in damages.

The other view of the case is that when a carrier permits its car to become so crowded with passengers as that those wishing to alight at a station cannot do so without pushing and crowding a passenger, who does not desire to alight, to such an extent as to cause him to be thrown or shoved from the car, the company should be held liable in damages upon the ground that it is under a duty to anticipate the reasonable and natural conduct of passengers in making an effort to get off of a car that

has been permitted by its servants to become so over-crowded as that the passengers cannot alight without shoving and pushing to such an extent as to endanger the safety of those who do not wish to alight.

It is elementary law that a street car company as a common carrier of passengers must exercise the highest degree of care practicable and consistent with the proper conduct of its business to insure their protection from injury while being carried, and this duty extends to and embraces everything that may happen during the carriage that the carrier can prevent by exercising this high degree of care.

It is also true that a carrier is not to be held liable for a wrong done or an injury inflicted by the act of a passenger that could not be reasonably anticipated by the servants of the carrier charged with the duty of looking after and protecting passengers from injury, and so if a passenger, in alighting from a car not over-crowded, should carelessly or thoughtlessly or intentionally shove or push another passenger, thereby causing him to sustain injury, the carrier should not be held responsible, as it cannot be presumed to anticipate what rude or reckless or careless conduct a passenger in his hurry to get off may be guilty of, or be prepared to prevent it. But a carrier can determine the number of passengers that may be safely carried in a car, and it can control the number that shall be permitted to ride on a car, and from its knowledge of conditions it can reasonably anticipate the number of passengers that will get on and off at given points during certain hours in the day, and when a carrier permits a car to become overcrowded with passengers, it assumes the obligation of exercising the highest practicable degree of care consistent with the proper conduct of its business to prevent a passenger from being injured by the pushing and crowding of other passengers at points where it may reasonably expect large numbers of passengers to get off its car, as it was the custom to do at the transfer station where appellee was injured.

While a carrier may not be under any duty to anticipate or provide against accidental injury that may be inflicted by the rudeness or carelessness of one or a few passengers, it must be charged with knowledge of the habits of crowds of passengers and their indifference for the rights of others when they are in a hurry to get off at the terminal, transfer and other points established by it.

It was therefore the duty of the servants of the carrier in charge of the car on which appellee was riding, when it reached the transfer station at which she was injured to take such precautions as the high degree of care for her safety demanded to protect her from being injured by the crowd it might reasonably anticipate would and did leave the car at this point. But it does not appear from the evidence that anything whatever was done by the servants of the company to prevent her from being pushed or thrown from the car. They made no effort and exercised no care to save her from injury. Appellee was not injured by an individual act of rudeness or recklessness or carelessness, but as a result of conditions that the carrier had created; and when a carrier creates conditions that imperil the safety of passengers, it must at the same time take such precautions as in the exercise of the highest practicable degree of care consistent with the proper conduct of its business are necessary to save them from danger. Thompson on Negligence, Vol. 3, sections 2706-a, 2822, 3491. Lobner v. Metropolitan Street Railway Co., 79 Kansas, 811, 21 L. R. A. n. s., 972; Glennen v. Boston Elevated Railway Co., 207 Mass., 497; 32 L. R. A. n. s., 470; Baldwin v. Fairhaven W. R. Co., 68 Conn., 567; Kuhlen v. Boston & Northern Street Railway Co., 193 Mass., 341, 7 L. R. A. n. s., 729; Ellinger v. Philadelphia R. R., 153 Penn St., 213, 34 Am. St. Rep., 697; Hausen v. North Jersey Street Railway Co., 64 N. J. L., 686.

Another ground urged for reversal arose out of the alleged misconduct of the jury. It appears that late in the afternoon of the day on which the case was submitted to the jury, and after they had taken the case under consideration, they returned into the court room and stated they could not agree upon a verdict. The court then suggested that if there was any probability of an agreement that he would give them further opportunity to consider the case, and thereupon one of the jurors said to the court, in open court: "We have already agreed to find a verdict for the plaintiff, but we can't agree upon the amount," and another juror publicly observed that he believed further consideration would result in a verdict. After this remark the jury again retired for consultation, and later in the evening were dismissed by the court until the following morning, when, upon further consultation, they returned a verdict.

It further appears that a reporter for a morning daily paper happened to be in the room when the colloquium between the judge and the jury took place, and the following morning there appeared in the paper a news item setting out in substance what had occurred. It may be conceded that the jury acted improperly in disclosing publicly what occurred in the jury room before a verdict had been returned, but there is no suggestion in the record that what was said or done prejudiced the rights of the railway company. The jurors who voluntarily made the statements to the court, and who were promptly admonished by the court to desist from relating what happened in the jury room, were not influenced by any improper motive, nor does it appear that anything outside of the jury room subsequently occurred that influenced them to agree upon a verdict; nor did appellee or her counsel have anything whatever to do or say in respect to the matter. In fact, counsel for neither of the parties was in the court room at the time the incident occurred. It does not seem to us to be of sufficient moment to justify us in granting a new trial.

As the instructions given by the court conformed to the law of the case as we have expressed it, and the evidence was sufficient to justify the verdict, the judgment is affirmed.