## LAURA P. SHEPLEY v. MINNEAPOLIS MOTOR BUS TERMINAL COMPANY AND ANOTHER.[1]

April 4, 1930.

No. 27,795.

[1]Reported in 230 N. W. 264.

*Olof L. Bruce,* for appellant.

*Prendergast & Flannery* and *Sumner B. Young,* for respondent Minneapolis Motor Bus Terminal Company.

*Cobb, Hoke, Benson, Krause & Faegre,* for respondent Northland Transportation Company.

HOLT, J.

In this personal injury action defendants had a directed verdict, and plaintiff appeals from the order denying her motion for a new trial.

One of defendants maintains a motor bus station in the city of Minneapolis used by defendant Northland Transportation Company and other bus transportation companies. On August 20, 1926, at 5 or 5:30 in the afternoon; plaintiff had procured a ticket at the station and was about to board a bus of the Northland company for her home at Lake Minnetonka when she claims to have been jostled or pushed so that her foot slipped between the steps of the bus and the loading platform severely injuring her knee. Plaintiff charged defendants with negligence in that the platform from which passengers entered the bus was narrow, dangerous and unsafe and that defendants carelessly and negligently permitted great numbers of passengers to push and crowd plaintiff off the narrow platform and against the bus as she was about to step into it. When plaintiff's evidence was in defendants rested and moved for a directed verdict.

The evidence in respect to the so-called loading platform was so meager that the jury could form no intelligent idea as to its con-

struction or wherein it fell short of serving the purpose for which it was intended and used. So negligence in that regard is eliminated.

As to the immediate cause of the accident and whether defendants in the exercise of due care could have prevented it, we have only this testimony of plaintiff:

"Why, I purchased the ticket and of course went into the depot first, and then went around to where they loaded the buses. The door was closed that led out to the landing platform, but they had seats along the wall inside, a rather narrow passageway. I sat down there to wait for my bus, and as the bus arrived I went near the door to open and let us go out. When they did open that door there was a bus arrived on the other side of the landing platform, so there were two groups going through at the same time, one headed for the Mound bus and the other headed for the other bus. * * * I couldn't help myself at the time, owing to my physical condition [six months pregnant], so I was carried along with the crowd. I appealed to one of the attendants there and received a very short answer, but I was carried along with the crowd. When I got to the door of the bus and went to put my foot on the steps, I was pushed and lost my footing, and there was that much space (indicating) between the landing platform and the bus, and my foot slipped and went down there, and my knees went against the brass-trimmed steps."

No information is furnished as to the indicated distance between the landing platform and the bus step, and the complaint alleges no negligence in respect to the distance. Plaintiff's statement that she appealed to one whom she took to be an employe of defendants is too vague to be of assistance. She does not state either what she or the employe said, nor how near she was to the point or moment of the accident. She was accustomed to take the bus to and from the summer home at Mound. At that time of day there was reason to expect that Lake Minnetonka dwellers would be eager to board the bus for home. But there is no evidence that the crowd was different from other days, or that either plaintiff or anyone else was

crowded off the platform, or that anyone interfered with plaintiff's getting to the bus door first. At least she does not say that anyone entered ahead of her. She had got her foot on the bus step when she said someone pushed her. Whether this was an accidental bump or a movement forward of a crowd is left to uncertainty. At one place in her testimony plaintiff appears to convey the impression that the employe "appealed" to was away from the bus door, and at another place that it was the driver to whom she gave the ticket as she was about to enter. There is no evidence of unusual crowds of passengers on this day or that the facilities of defendants for handling such crowds with the greatest care and safety were not ample either then or at any other time. Hence this case is readily distinguishable from Kuhlen v. Boston & N. St. Ry. Co. 193 Mass. 341, 79 N. E. 815, 7 L.R.A.(N.S.) 729, 118 A. S. R. 516, cited by plaintiff. An authority more in point and in favor of defendants is Ritchie v. Boston Elevated Ry. Co. 238 Mass. 473, 131 N. E. 67. Apart from the testimony of plaintiff that she was pushed, there is absolutely no evidence of jostling or pushing. And plaintiff did not state where she was pushed or what part of her body came in contact with any other person.

It is conceded that plaintiff was a passenger when the accident occurred and that the defendant bus company owed her the highest degree of care consistent with the nature of its business to protect against injury. There is no need to consider that question. Our decisions are fully cited in 1 Dunnell, Minn. Dig. (2 ed.) § 1261. But with this fact in mind we must nevertheless hold that the evidence is too weak and indefinite to furnish any reasonable ground for the inference or conclusion that the defendant bus company's or its servants' negligence or failure to discharge the duties of carriers of passengers caused plaintiff's injuries. From her testimony, her fall appears to have been one of those unfortunate accidents for which no one has been proved legally blamable.

The order is affirmed.