## River Excursion Company v. Kuntz.

(Decided June 21, 1932.)

WOODWARD, HAMILTON & HOBSON and HUBERRT SIRLES for appellant.

EDWARD G. KLEMM and JOSEPH S. LAWTON for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

Mary Kuntz recovered judgment against the River Excursion Company for the sum of $2,102.70 as damages for injuries alleged to have been occasioned by a fall from a stairway leading from the third or hurricane deck to the second deck of an excursion boat known as the steamer America owned and operated by that company. It has appealed.

Appellee alleged in her petition that in attempting to descend from the upper deck she was crowded and pushed by other passengers, thereby causing her to fall, and that her injuries were due to the negligence of appellant in permitting the boat to be overcrowded and in failing to exercise proper care to safeguard and protect her from injury when its agents and servants knew, or by the exercise of ordinary care could have known, that, by reason of the large crowd and overcrowded condition there would be such pushing, jamming, and crowding on

·the part of passengers as would render the use of the stairways unsafe and dangerous. By answer denying the allegations of the petition and affirmatively pleading contributory negligence upon part of appellee and by reply controverting such affirmative allegations, the issues were completed.

No question is made as to the nature or extent of injuries sustained by appellee, and we take this as at least tacit concession that, if appellant is liable at all, the damages awarded are not excessive. As grounds for reversal it is argued: (1) That the court erred in not sustaining motion for peremptory instruction on behalf of the company; (2) that the instructions given to the jury are erroneous; (3) that the verdict is flagrantly against the evidence.

The undisputed facts are that on June 11, 1929, a picnic was given at Fontaine Ferry Park for members of a number of churches and Sunday schools of Jeffersonville, and an excursion party consisting of 2,151 took passage on the steamer America at Jeffersonville, and were carried through the locks to the Kentucky side at a point near Chestnut street in Louisville, from which point they walked to the park. On boarding the steamer, appellee, her sister, Mrs. Elizebeth Bushfield, and Mrs. Edna West went to the third deck, where they later procured seats near the front end. The decks were connected by three stairways on either side.

The evidence of appellee and her companions is to the effect that, after the boat landed, they remained seated for a few minutes, and until some of the passengers had disembarked and were walking up the river bank. Mrs. Kuntz and her sister testified that a man dressed in a blue uniform and who appeared to be an officer of the boat passed near them and called, ''Clear the deck,'' but that they remained seated for something like 20 minutes until the same man again passed near them, and again and in a commanding voice said, ''Clear the deck.'' They thereupon left their seats and started for one of the stairways. They testified that the crowd was congested near the stairway, and that there was more or less crowding and pushing. Mrs. Kuntz stated that, when she had gotten about halfway down the steps, she was pushed by some person or persons back of her, and thereby caused to fall to the floor of the second deck and to receive the injuries of which she complains. She

stated that she was pushed by children who seemed to be in a rush to get down. While Mrs. Kuntz testified that the steps were crowded, evidently there was no one on the steps or the landing in front of her at the time she fell, since she stated that she did not fall on or against any other person. Mrs. Bushfield testified that she became separated from her sister, and was on the first step when the accident occurred; that the steps were crowded, and that there was pushing and crowding to the front and rear of her; that she did not see Mrs. Kuntz fall off the steps, but heard her scream when she fell. Mrs. West testified that she was just behind Mrs. Bushfield at the head of the steps, and that there was some pushing and crowding, but mostly by children who seemed to be anxious to get to the next deck. There is some conflict between the evidence of Mrs. West and that of Mrs. Kuntz and Mrs. Bushfield as to when the commands to clear the deck were given with reference to the time they left their seats. Her statements are not clear on this point, but it seems that she heard the command given once when they left their seats, but she was at the head of the steps when she heard the second command given, and did not see the person giving it. These witnessses also testified as to some crowding when the boat was going through the locks, and that officers were supervising the movements of the crowd at that time. They also stated that they considered it a large crowd on the boat and on the hurricane deck, although they gave no estimate as to the number on that deck, and there is little evidence as to the conduct of the crowd or to indicate that there was any jostling, crowding, or pushing of any consequence except at and near this particular stairway before and at the time Mrs. Kuntz fell.

For appellant it is shown that the steamer was subject to government regulation and control, and that the stairway in question had been inspected and approved by government inspectors. Under government regulations, this boat was permitted to carry 3,000 passengers. It is shown by record that during the months of July, and August, 1929, this boat on two different occasions carried nearly 3,000 passengers, and on another occasion 3,865 passengers, and on two other dates over 2,000. The seating capacity of the boat was about 3,000.

Capt. Frank Oehler, known as "Dad" Oehler, was police officer on the boat, and, when the officers were

called before appellee and her witnesses, some of them identified him as the one who was on the upper deck and who gave the commands to clear the deck. He testified that he was not on the upper deck after the boat landed, but, as was his custom, went to the lower deck to assist in putting down the stage or gangplank and to assist in handling the crowds leaving the boat. It is also in evidence for appellant that in passing through the locks the passengers on the boat usually crowded to the front of the upper deck to witness the operation of the locks, and it was necessary to have officers keep the crowd back at such times so that the captain might signal to the pilot. This was done on this occasion. One witness, an officer or agent of the company at the time the accident occurred, but who had left its service at the time of the trial, testified that Mrs. Kuntz called at the office of the company the latter part of July, and made complaint about her injuries, and at that time stated that a wet leaf on the step caused her to slip and fall. In rebuttal, Mrs. Kuntz testified that she never called at the office of the company, and did not make the statement that she slipped on a wet leaf.

From the foregoing it will be seen that, while there was a large crowd on the boat, it was not, in fact, overcrowded, nor does the evidence of appellee and her witnesses tend to show that the upper deck was overcrowded or that it was filled up to or beyond its capacity. There is no evidence of boisterous or rude conduct upon the part of the passengers on the upper deck prior to the time the boat landed which would lead persons of ordinary prudence and foresight to apprehend that there would be a stampede or such a rush of passengers toward the stairway in question as to endanger the safety or lives of the passengers, and there is no evidence whatever as to any crowding, pushing, or jamming on or near any of the other five stairways or as to any crowded condition elsewhere on the deck. None of the witnesses testify that any officer of the boat saw or knew of the alleged crowded condition or the pushing and crowding on or near the steps where appellee and her friends descended.

The basis of a carrier's liability for a tort upon a passenger by a fellow passenger is not the wrongful act of the fellow passenger, but the omission or failure of the agents or servants of the carriers to take proper precautionary measures to prevent the injury when they

know, or in the nature of things should know, of the threatened or impending danger to the passenger.

There are two lines of cases dealing with the questions of the carrier's liability or nonliability for injuries to a passenger by violent or negligent acts of fellow passengers or of strangers, yet the decision in all of them turns upon the essential element of knowledge of the carrier as to conditions that brought about the injury.

Appellee cites and relies upon the cases of South Covington & Cincinnati St. R. Co. v. Harris, 152 Ky. 750, 154 S. W. 35; South Covington & Cincinnati St. R. Co. v. Vanice, 211 Ky. 774, 278 S. W. 116, 117; Kuhlen v. Boston & N. St. R. Co., 193 Mass. 341, 79 N. E. 815, 7 L. R. A. (N. S.) 729, 118 Am. St. Rep. 516, and a number of other cases where the carrier was held liable as sustaining their position on the questions presented for decision. But an examination of these cases will reveal that their decision was rested upon antecedent facts of such nature and character leading up to the injury as to inform the carrier's servants in charge of its facilities, for conveying passengers of the necessity of taking proper measures to prevent injury to passengers by violent, riotous, and unusual pushing, jamming, and shoving on the part of other passengers in boarding or leaving the conveyance.

In the South Covington & Cincinnati St. R. Co. v. Harris, supra, this court upheld the judgment for a passenger who was pushed from the platform of a street car by the rush of other passengers getting on the car at a transfer station. In the course of the opinion it was said:

"There is really little contradiction in the evidence as to the fact that the car and the platform were awfully crowded. . . ."

The opinion after adverting to the general rule that a carrier cannot be held liable for a wrong done or injury inflicted by a passenger that could not be reasonably anticipated by the servants of the carrier charged with the duty of protecting the passenger from injury, further said:

"But a carrier can determine the number of passengers that may be safely carried in a car, and it can control the number that shall be permitted to ride on a car, and from its knowledge of condi-

tions it can reasonably anticipate the number of passengers that will get on and off at given points during certain hours in the day, and, when a carrier permits a car to become overcrowded with passengers, it assumes the obligation of exercising the highest practicable degree of care consistent with the proper conduct of its business to prevent a passenger from being injured by the pushing and crowding of other passengers at points where it may reasonably expect large numbers of passengers to get off its car, as it was the custom to do at the transfer station where appellee was injured. While a carrier may not be under any duty to anticipate or provide against accidental injury that may be inflicted by the rudeness or carelessness of one or a few passengers, it must be charged with knowledge of the habits of crowds of passengers and their indifference for the rights of others when they are in a hurry to get off at the terminal, transfer, and other points established by it.''

In South Covington & Cincinnati St.. R. Co. v. Vanice, supra, this court upheld the recovery of a passenger injured by the rush of other passengers in attempting to board the ''owl'' car in the terminal station in Cincinnati at 1:30 on Sunday moring. It is stated in the opinion that

''according to the allegations of the petition, and the evidence for the plaintiff, it was customary . . . for the passengers to rush, push, crowd, and jostle each other in their efforts to enter the car.''

In substance, it was held that from past experiences it was the duty of the carrier to take notice that unusual crowds would gather at that time in its terminal, and would indulge in pushing, shoving, and jostling even to boisterousness in boarding the car, and it was the duty of the carrier to take reasonable steps by providing guards to protect passengers from injury.

In the case of Kuhlen v. Boston & Northern Street R. Co. supra, it appears that the passenger was injured by the pushing and struggling of other passengers attempting to board a car, and the evidence discloses that at that particular time of day when the injury was sustained there was usually a large crowd in the station, and there had been on many previous occasions the same

character of struggling, pushing, and surging upon the part of passengers attempting to board the car. That case and the South Covington & C. St. R. Co. cases refer to many other cases where the evidence disclosed such past experience and antecedent conditions as would necessarily bring notice to the carrier of the impending danger to the passenger and to impose upon it the duty of taking all reasonable measures consistent with the conduct of its business to guard against it.

Prominent among the cases holding the carrier not liable for injuries to a passenger caused by the rushing, pushing, and jostling of fellow passengers are MacGilvray v. Boston Elevated R. Co., 229 Mass. 65, 118 N. E. 166, 167, 4 A. L. R. 283; Alward v. Boston E. R. Co., 250 Mass. 244, 145 N. E. 332; Stanley v. Boston E. R. Co., 248 Mass. 494, 143 N. E. 338; Ritchie v. Boston, E. R. Co., 238 Mass. 473, 131 N. E. 67, 68; Shepley v. Minneapolis Motor Bus Terminal Co. et al., 180 Minn. 84, 230 N. W. 264.

In the MacGilvray case, a passenger in attempting to enter a car was injured. There was evidence that the crowd in the station was large and there was pushing and jostling. Among other things, the opinion said:

"The defendant as a carrier of passengers for hire was bound to exercise the highest degree of care consistent with the nature and extent of its powers, to protect the plaintiff from all dangers that were naturally and ordinarily to be expected. It was also its duty to use proper precautions to protect her from injury caused by the misconduct of other passengers, which ought reasonably to have been anticipated and guarded against. . . .

"The evidence in this case is not of such a character as to show any conduct on the part of the passengers which the defendant should have anticipated and guarded against."

It was further stated in the opinion that the case was governed by cases like McCumber v. Boston E. R. Co. 207, Mass. 559, 93 N. E. 698, 32 L. R. A. (N. S.) 475, etc., and that the Kuhlen case, etc., were not applicable. In the Alward case, where the passenger was injured by a surging crowd, the opinion said:

"There was ample evidence that at that hour of the day there was usually a crowd on the plat-

form, but nothing to indicate that it was unruly or boisterous.''

It is also stated that the case is governed by cases like MacGilvray v. Boston E. R. Co. and others, and is distinguishable from the Kuhlen and other cases of like character.

In the Ritchie case, the passengers, in haste to leave the car, crowded plaintiff and caused her to fall and sustain injury. She testified that the conductor kept saying, ''Step lively,'' ''Step lively.'' In affirming the judgment for the company, it was said:

> ''When there is evidence of boisterous or disorderly conduct which should have been foreseen and guarded against, the jury may find the carrier to be negligent if it failed to prevent it; but there are no such facts in the case at bar. All that appears is that the passengers in their haste to leave the car, crowded against the plaintiff in such a manner that she fell to the ground. On these facts there was no evidence of the defendant's negligence to go to the jury. [Citing cases.] It was not negligent for the conductor to urge the passengers to 'step lively.' . . . Nor was the conductor negligent in failing to prevent passengers from crowding as they left the car. There was no reason to expect anything unusually dangerous at the time, and it is not shown that the passengers were disorderly or unruly or acting in such manner as to call for any interference by the defendant or its agents.''

It would serve no good purpose to extend the discussion of the two classes of cases, since it is already apparent that the distinctive feature in one class is the presence of evidence of past experience or of antecedent facts leading up to the injury of such nature that agents of the carrier knew or in the very nature of the circumstances should have anticipated the injury and used proper care to have prevented it, and in the other class it is the absence of such evidence.

As a general rule, the carrier is not liable for injuries to a passenger caused by the tortious, violent, or wrongful acts of fellow passengers, unless its servants knew, or by the exercise of ordinary care and prudence could have anticipated, that such act or acts of fellow passengers would occur, and with that knowledge failed

596

to use proper care to protect the passenger. Hatfield v. Payne, 195 Ky. 310, 242 S. W. 32; Clarke v. Louisville & N. R. Co., 49 S. W. 1120, 20 Ky. Law Rep. 1839; Louisville & N. R. Co. v. McEwan, 31 S. W. 465, 17 Ky. Law Rep. 406. And not only so, but that knowledge or the opportunity to have acquired it must have existed for a sufficient length of time in advance of the injury to the passenger to afford the carrier's servants reasonable opportunity to take necessary measures to prevent it. Hutchinson on Carriers (3d Ed.) 980.

Clearly in the circumstances appellant's servants were not required to use more than ordinary care and prudence to anticipate that there would be such an unusual rush and crowding of passengers as would endanger the safety of others using the stairway, and the instructions given are erroneous and prejudicial, in that they require a higher degree of care in that respect.

Since the judgment must be reversed on account of error in instructions, and the evidence may be materially different on another trial, the other questions argued for reversal are specifically reserved.

Judgment reversed for proceedings consistent with this opinion.

Whole court sitting.